Joseph LUPO

v.

John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut, et al.

Michael F. ZAGARINO

v.

The ATTORNEY GENERAL OF the UNITED STATES et al.

Civ. Nos. B–932, B–74–57.

United States District Court,
D. Connecticut.

Feb. 21, 1974.

Dennis E. Curtis, New Haven, Conn., for petitioners.

Barry J. Cutler, Asst. U. S. Atty., New Haven, Conn., for respondents.

## MEMORANDUM OF DECISION

NEWMAN, District Judge.

These cases present interesting issues concerning the procedures used by the United States Board of Parole in reaching and explaining its decisions concerning parole. The issues arise because the Board, though not constitutionally required to give any reasons for its decisions, Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), has commendably adopted a new procedure designed to promote rationality in the decision-making process and to enhance understanding of the process by all concerned, especially prisoners. Key ingredients of the new procedure are (a) the use of a table of guidelines as an aid in deciding the appropriate length of time a prisoner should serve before being paroled, see 28 C.F.R. § 2.52, and (b) a requirement that a prisoner denied parole receive in writing the reasons for the decision, see

28 C.F.R. § 2.15(c) (revised).[1] These aspects of the new procedure are detailed in Battle v. Norton, 365 F.Supp. 925 (D.Conn.1973), and Grasso v. Norton, 371 F.Supp. 171 (D.Conn.1974).

The guideline table sets forth suggested lengths of time to be served prior to parole for various combinations of two variables: the severity of the offense and the characteristics of the offender. The precise issues raised by these cases are (a) whether, in determining the appropriate offense to be used for locating a prisoner on the guideline table, the Board must use the offense for which he was convicted (hereafter "convicted offense") or can use the offense the Board concludes he has committed based on the Board's understanding of facts that allegedly occurred (hereafter "alleged offense"), and (b) whether, if the Board locates a prisoner on the guideline table by using the alleged offense and denies parole because he has not yet served the time indicated for a combination of that offense and his offender characteristics, a decision to deny parole is adequately explained by informing the prisoner that "your release at this time would depreciate the seriousness of the offense committed and it is thus incompatible with the welfare of society."

Petitioners, who were co-defendants, pleaded guilty in the Eastern District of New York to violating 18 U.S.C. § 371 by conspiring to transport in interstate commerce stolen goods and money of a value in excess of $5,000. Lupo was sentenced to three years' imprisonment and began serving the sentence at Danbury on September 8, 1972. Zagarino was sentenced to five years' imprisonment on July 21, 1972, and began serving his sentence on that date. Petitioners' sentences were later modified to make them eligible for early parole pursuant to 18 U.S.C. § 4208(a)(2). Following this modification, both petitioners were considered for parole in March, 1973, prior to the expiration of one-third of their sentences. Both were denied parole and continued for an institutional review hearing in March, 1974, for Lupo, and in August, 1974, for Zagarino.

■ After exhausting the Board's administrative review remedies, petitioners sought habeas corpus relief pursuant to 28 U.S.C. § 2241, which provides sufficient jurisdiction to consider the merits of their claims. See Battle v. Norton, *supra,* 365 F.Supp. at 927–928; *cf.* United States ex rel. Marrero v. Warden, 483 F.2d 656 (3d Cir. 1973).

The facts concerning the Board's use of its guideline table are more clearly known in Lupo's case than in earlier cases such as *Battle* and *Grasso* because he has included with his papers not only the Board's decision and statement of reasons but also the recommendation and reasons given to the Board by the hearing examiners. The Government does not dispute the facts thereby disclosed, nor the pertinence of these facts to Zagarino's case.[2] In applying the guideline table, the examiners placed Lupo in the "very good" category of offender characteristics with a salient factor score of eleven, the highest possible rating. See 28 C.F.R. § 2.52; Grasso v. Norton, *supra,* 371 F.Supp. at 173 n. 1. The examiners then rated Lupo's offense in the "moderate" severity category. Since the conspiracy offense to which Lupo pleaded guilty is not listed on the guideline table, the examiners apparently rated him according to similar offenses that are listed. This followed footnote 1 of the guideline table, which pro-

---

1. The guideline table is apparently in use nationally as of November 19, 1973, see 28 C. F.R § 2.52, 38 Fed.Reg. 31942 (1973), though the self-imposed obligation of giving reasons may still be confined to the Board's Northeast Region, which instituted the requirement experimentally in October, 1972, see Bureau of Prisons Operations Memorandum 40100.14, and then formalized it in a regulation effective October 1, 1973, see 28 C.F.R. § 2.15 (revised), 38 Fed.Reg. 26652 (1973).

2. The Government has formally been called upon to respond to Lupo's petition and has advised informally that its written response is equally applicable to Zagarino's petition.

vides: "If an offense is not listed above, the proper category may be obtained by comparing the severity of the offense with those of similar offenses listed." While it is not clear which listed offense the examiners thought was comparable to Lupo's convicted offense,[3] neither petitioner nor the Government disputes that Lupo's *convicted* offense is properly rated in the "moderate" severity category.

The guideline table suggests a confinement period of twelve to sixteen months for a prisoner with a "moderate" severity offense and "very good" offender characteristics. Of course, this is only a guideline, and "where the circumstances warrant," a decision can be reached to grant parole at an earlier or later time. 28 C.F.R. § 2.52(c). Apparently the examiners found no special circumstances warranting a decision different from the guideline, since they recommended to the Board that Lupo be continued for an institutional review in January, 1974, a point sixteen months into his sentence. The examiners also recommended that decision be based on the now familiar "depreciating the seriousness of the offense" reason. 28 C.F.R. § 2.15(b)(1) (revised).[4]

As the Government acknowledges, "it is apparent that the Board regarded the instant offense as more serious than the hearing examiners." (Govt.Br. p. 1). The hearing examiners' recommendation alerted the Board to the fact that "the items which subject and his companions transported from Chicago to New York [the convicted offense] came from [a] robbery in Toledo, Ohio." The examiners also reported that state charges against Lupo for this robbery had been

dismissed, but that "the circumstantial evidence is quite strong." Officials at the Federal Correctional Institution, Danbury, have advised that both Lupo and Zagarino were charged with armed robbery, and that these charges were nolled after their federal convictions.

The record does not establish exactly how the Board applied its guideline table in light of these circumstances. Its decision continued Lupo two months longer than the examiners and gave the same "depreciating the seriousness of the offense" reason. The Government's brief appears to acknowledge that Lupo's offense was rated by the Board in the "very high" severity category, a category that includes the offense of armed robbery. Officials at Danbury confirm that this offense rating was used for Zagarino, who also was placed in the most favorable category of offender characteristics with a salient factor score of ten. The guideline table suggests a confinement period of 26 to 36 months for a prisoner with a "very high" severity offense and "very good" offender characteristics. Since these time periods are longer than the setoffs given both prisoners, the Government contends the Board properly applied its guideline table and acted within its discretion. Petitioners challenge a use of the guideline table based on the alleged offense rather than the convicted offense, and the adequacy of the reason given for denying parole in these circumstances.

■ Petitoners' first complaint attacks not simply use of the alleged offense to locate them on the guideline table, but really questions whether the Board may give *any* consideration to al-

---

3. Lupo's convicted offense of conspiracy to transport in interstate commerce goods and money valued in excess of $5,000 could have been compared to the following offenses listed in the "moderate" severity category: "Theft, forgery/fraud ($1,000–$19,999)"; "Receiving stolen property with intent to resell (less than $20,000)"; or "Interstate transportation of stolen/forged securities (less than $20,000)."

4. Of the scores of petitions this Court has received from prisoners at Danbury challenging adverse parole decisions since the Board began stating reasons for parole denial, none has omitted as a reason that "release at this time would depreciate the seriousness of the offense committed." On rare occasion an additional reason has also been included.

legations of criminal conduct that have not resulted in conviction. The same issue has been a source of continuing concern in the context of sentencing. It is generally agreed that a sentencing judge may consider a wide range of information, including "information bearing no relation whatever to the crime with which the defendant is charged." Gregg v. United States, 394 U.S. 489, 492, 89 S.Ct. 1134, 1136, 22 L.Ed.2d 442 (1969); Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Sentences have been validly imposed based on evidence of other offenses not stated to be related to the convicted offense, United States v. Cifarelli, 401 F.2d 512, 514 (2d Cir. 1968); on evidence introduced on counts that resulted in an acquittal, United States v. Sweig, 454 F.2d 181 (2d Cir. 1972); and, without presentation of evidence, on allegations in related counts that were dismissed, United States v. Doyle, 348 F.2d 715 (2d Cir. 1965); see, generally, United States v. Weston, 448 F.2d 626, 633 (9th Cir. 1971) and cases there cited.

Despite the frequency with which this rule is announced, its risk of penalizing a defendant for alleged offenses of which he is in fact innocent has prompted many courts to develop procedural protections to lessen this risk. Thus, courts have ruled that, at sentencing, allegations of misconduct must be made known to a defendant, United States v. Picard, 464 F.2d 215 (1st Cir. 1972); that disputed allegations must be tested at a hearing, United States v. Malcolm, 432 F.2d 809 (2d Cir. 1970); United States ex rel. Brown v. Rundle, 417 F.2d 282 (3d Cir. 1969); and that alleged misconduct cannot be relied upon unless supported by "persuasive" information. United States v. Weston, *supra*, 448 F.2d at 634.

These decisions stem, in varying degrees, from Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), in which the Supreme Court set aside a sentence of an unrepresented defendant whose sentence was based on false information about prior convictions. While the Second Circuit earlier viewed *Townsend* as a case concerned primarily with lack of counsel, see United States v. Doyle, *supra*, 348 F.2d at 722, it has more recently drawn from it this more sweeping rule: "Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." United States v. Malcolm, *supra*, 432 F.2d at 816. See United States v. Tucker, 404 U.S. 443, 447, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972) (approving the vacation of a sentence based on "misinformation of constitutional magnitude").

■ The parole decision has traditionally been subjected to less scrutiny (both judicial and academic) than the sentencing decision both because parole has been considered a matter of grace and because the parole decision is made within the limits set by the sentence, whereas the sentencing decision is made within the usually broader limits of a statutory penalty. The validity of both arguments is subject to question. In any event, the use of alleged misconduct in parole decision-making is, from one standpoint, more disquieting than in sentence proceedings. Courts' traditional reluctance to impose procedural due process protections upon parole proceedings leaves prisoners exposed to the risk that untrue charges will jeopardize their chances for parole, and that risk is not subject to minimizing procedures such as those adopted in *Malcolm*, *Picard*, and *Weston*. The problem appears to have three unsatisfactory solutions: (a) prevent the Board from considering unproved or at least unsubstantiated charges of misconduct, a course that might improperly curtail the Board's broad discretion to consider all relevant factors, 28 C.F.R. § 2.14 (revised); Scarpa v. U. S. Board of Parole, 477 F. 2d 278 (5th Cir. 1973); (b) impose procedural due process protections that re-

quire disclosure to the prisoner of misconduct allegations and some minimal opportunity for him to challenge the allegations, a justifiable course, but one which lower courts in this Circuit cannot require in light of current rulings concerning constitutional rights in parole hearings, see Menechino v. Oswald, *supra*; or (c) leave the prisoner to the risk that parole may be denied because of an allegation that is untrue, unchallenged, and even unknown to the inmate.

■■ The Board's own newly-adopted regulations offer a hopeful solution to this trilemma. By making its table of guidelines known to prisoners and by requiring reasons for denial of parole, the Board has adopted procedures well designed to reduce the risks that parole will be denied based on totally unfounded charges. Because the Board's own procedures serve such a vital function, it is especially important that the procedures be carried out with faithful adherence to the Board's regulations. The normal rule that agencies must observe their own regulations has added significance in this case because of the important safeguard these regulations can supply.

■ In the context of these cases, the crucial regulation of the Board that affords protection against unfounded charges is the requirement that reasons be given for adverse parole decisions. 28 C.F.R. § 2.15 (revised). When the Board uses an alleged offense as a basis for parole decision-making, this requirement of stating reasons becomes the prisoner's sole protection against the risk that he may be unfairly penalized because of charges on which he was never convicted and which he may be able to controvert, either at the parole hearing or upon administrative appeal from an adverse decision. Unless the word "reasons" is to be drained of meaning, the Board must inform a prisoner that an alleged offense is the basis of an adverse parole decision.

In these cases it is inferable from the record and the Government acknowledges that petitioners' alleged offense was considered by the Board, apparently to increase the offense severity rating. This led the Board to select as the appropriate guideline an incarceration period of significantly greater length than their convicted offense warranted. They were therefore denied parole and given setoffs until a point still short of the guideline range for their alleged offense. In doing so, the Board did not disclose to petitioners at any time that their alleged offense was in fact the reason for their parole denial.

Petitioners were told only that their release would depreciate the seriousness of "the offense committed." Battle v. Norton, *supra*, permitted the Board to give this reason as a short-hand way of saying that a prisoner had not yet been incarcerated for the period of time indicated by the guideline table, *i. e.*, the suggested time for his *convicted* offense and his offender characteristics. But in petitioners' cases this same reason is totally uninformative because it fails to alert them to the fact that their *alleged* offense was the reason for parole denial. Worse yet, it is misleading because it is the same reason the Board uses when it denies parole to those, like Battle, who are rated according to their *convicted* offense.

Lupo alleges in his papers that he has at all times maintained his innocence of the armed robbery charges. (Lupo reply brief, p. 2). Thus, the Board's failure to identify his alleged offense as the reason for parole denial not only breached its regulation requiring reasons, it also significantly prejudiced petitioners because it deprived them of the opportunity to challenge serious allegations that they wish to contest.

■ The Board's regulations specify that "aggravating circumstances," such as might be involved in a prisoner's alleged offense, can be considered in parole decision-making. Consideration of an alleged offense violates no presently cognizable constitutional right of these petitioners. 28 C.F.R. § 2.52(c) pro-

vides that "especially mitigating or aggravating circumstances in a particular case may justify a decision or a severity rating different from that listed." Thus, the regulations specify two distinct ways that an alleged offense can be considered. First, the Board can locate a prisoner on the guideline table by using his alleged offense. Second, the Board can apply the guideline table according to the prisoner's convicted offense and then, even though he has been incarcerated for the time indicated by the guideline, deny parole because of the aggravating circumstances of the alleged offense.

■ However, under either approach, the Board's regulation requiring a statement of reasons can be satisfied only if the prisoner is told that his alleged offense was the basis for parole denial and how that alleged offense was used. Thus, the Board must tell the prisoner either that it selected an offense severity category because of his alleged offense, or that it considered his alleged offense to be an aggravating circumstance that justified incarceration beyond the guideline period indicated for his convicted offense.

■ The regulation requiring a statement of reasons does not specify when reasons are to be given, though the normal expectation would of course be after a decision has been reached. However, when an alleged offense may be considered by the examiners, either to select an appropriate offense category or to continue confinement beyond a guideline period, it would be helpful to alert the prisoner to this prospect during the parole hearing in order to maximize his opportunity to challenge the allegations. The entire thrust of the Board's commendable new approach is to have objective facts such as a prisoner's offense and his offender characteristics play a prominent part in parole decision-making. Toward this end, the Board makes known to prisoners both the guideline table and the rating system used to score offender characteris-

tics. See Grasso v. Norton, *supra*, 371 F.Supp. at 173 n. 1. Obviously this is done so that a prisoner entering the hearing will be able to determine whether he has then served the time indicated by the guideline table or, if not, how much more time is indicated. But a prisoner's ability to know how he stands with respect to the guideline table depends on his knowing whether the Board is rating his offense severity by his convicted offense or some other alleged offense. And, unless told to the contrary, he would certainly assume, especially from footnote 1 of the table, that his convicted offense will be the basis for his rating. Whether or not the prisoner is confronted with his alleged offense during the hearing, explicit reference to his alleged offense as a reason for parole denial by the Board (indicating whether it was used to select a guideline or to continue confinement beyond the appropriate guideline) will still afford the prisoner an opportunity to challenge the allegations in his administrative appeals.

■ What these cases illustrate is that, apart from the issues raised by use of an alleged offense, the Board's regulation specifying "depreciating the seriousness of the offense" as a valid reason that may justify parole denial, 28 C.F.R. § 2.15(b)(1) (revised), does not fit very well with its regulation calling for use of a guideline table. With the table in use as an aid to decision, it would really be more candid for the Board, whenever it denies parole, to refer explicitly to the table in giving reasons. For example, if a prisoner had not yet been incarcerated for the length of time indicated by the table for his convicted offense and his offender characteristics, an understandable reason for parole denial would be simply a statement that the guideline time had not yet been reached and no special factors justified earlier release. Reference to the table tells the prisoner how seriously the Board regards his offense and how it rates his characteristics. Similarly, if parole were denied to a prisoner who had been in prison for

the length of time indicated by the table, an understandable reason would specify what special factors were thought to justify confinement beyond the guideline.

The "depreciating the seriousness of the offense" reason is at best unclear to prisoners who have not yet served their guideline times, and is misleading and inaccurate for prisoners who, for whatever reason, are denied parole beyond their guideline times. The first group simply cannot tell what the Board means. Many of them, to judge from their petitions, had understandably thought that the sentencing judge had weighed the seriousness of their offense and selected a sentence that gave adequate recognition to this factor. They do not understand why a parole board again weighs this same factor, which was originally formulated as a reason for parole denial under the Model Penal Code proposal where judges would not tailor maximum sentence lengths to individual defendants. See Battle v. Norton, *supra,* 365 F.Supp. at 928, n. 2.

Indeed, judges may well wonder why the Board's guideline table and its specified reasons for parole denial make no reference to the length of sentence imposed. They may even wonder why parole guidelines specify various *time periods of confinement* correlated with various offense categories, rather than various *fractions of the sentence imposed* correlated with various offender characteristics. Under the latter approach, the Board could still ameliorate unjustified sentence disparities by prudent departure from such guidelines. By not including sentence length as a variable on the guideline table, the Board runs the risk of averaging time spent in prison for particular offenses, without regard to the factors that led sentencing judges to impose terms of different lengths. Without denying the vices of some sentencing disparity, one may question a solution that would rely in part on averaging time actually served. Fortunately, the Board has demonstrated that it has not become ritualistically attached to

its guideline table. See Battle v. Norton, *supra,* 365 F.Supp. at 933 (Sigler affidavit). And this Court does not doubt that the Board, in some way, takes sentence lengths into account in making parole decisions. What remains troublesome is that neither the Board's table nor its stated reasons for parole denials tell prisoners what difference the sentence makes.

For the second group of prisoners, those denied parole after confinement beyond the guideline period, the "depreciating the seriousness of the offense" reason raises additional problems. Since the prisoner's offense has already been used to locate him on the guideline table, the Board's assessment of offense seriousness has been part of the determination of the appropriate guideline time suggested for his confinement. It is simply irrational for seriousness of the offense to be used first to determine the appropriate guideline period and then to be used again as the stated reason for confining a prisoner beyond that guideline period.

No doubt courts reviewing parole decision-making should accord the Board ample leeway in formulating decisions and carrying out its self-imposed requirement of giving reasons. In these cases, the merits of the Board's decisions to deny parole is not being questioned. However, because of inadequate compliance with the regulation requiring reasons for parole denial, reconsideration by the Board is warranted.

A final matter, not raised by petitioners, and wholly unrelated to the foregoing, concerns the timetable the Board adopted for giving them subsequent parole consideration. For reasons set forth in Grasso v. Norton, *supra,* this Court has held that a prisoner sentenced under § 4208(a)(2) and denied parole after a brief period of incarceration cannot be continued for subsequent review beyond one-third of his sentence. That is what happened to these petitioners. *Grasso* emphasized that the first review given (a)(2) prisoners, normally within three months of imprisonment,

occurred too early to permit them to demonstrate over a long enough period of time an exemplary prison performance that might justify favorable parole consideration. While these (a)(2) prisoners received their first parole consideration after approximately six months in prison, there still remains a considerable period of time between that point and the one-third point in their sentences, at which time non-(a)(2) prisoners are considered for parole. *Grasso* also emphasized that where this interval was substantial, continuance beyond the one-third point denied (a)(2) prisoners a review available to non-(a)(2) prisoners. The interval is about six months for Lupo and twelve months for Zagarino. These time periods, especially Zagarino's, are substantial. After one-third of their sentences, twelve and twenty months, respectively, both petitioners might well show the Board the "exceptionally good institutional program achievement" that may justify release earlier than the guideline table indicates. 28 C.F.R. § 2.52(c). Surely they have a better chance of doing so than after only six months in prison.[5] The one-third point of Lupo's sentence has already passed, and Zagarino's will be reached shortly.

Since petitioners' initial parole consideration was not consistent with the Board's regulations and since their current setoffs extend beyond one-third of their (a)(2) sentences, writs will issue discharging them from custody unless within thirty days the Board reconsiders them for parole in accordance with its regulations. This decision is not to be construed as intimating any views with respect to the propriety of granting or denying parole upon such reconsideration.

The papers for petitioner Zagarino may be filed without fee.

5. If the difference between the first parole hearing and one-third of the sentence were slight, as might occur with an (a)(2) prisoner sentenced to a year and a day, the purposes of § 4208(a)(2) would not be impaired by a Board decision to continue a prisoner to

expiration after a hearing held three months into the sentence. It is not likely that a subsequent hearing held only one month later would reveal a significantly improved prison performance.