Joseph BIANCONE

v.

John J. NORTON, Warden, Federal Correctional Institution, Danbury, Connecticut.

Civ. No. B–74–473.

United States District Court, D. Connecticut.

Nov. 18, 1976.

J. Daniel Sagarin, Schless & Sagarin, Bridgeport, Conn., for petitioner.

Peter C. Dorsey, U. S. Atty., Harold J. Pickerstein, Asst. U. S. Atty., New Haven, Conn., for respondent.

## MEMORANDUM OF DECISION

ZAMPANO, District Judge.

Petitioner, presently incarcerated at the Federal Correctional Institution, Danbury, Connecticut, seeks judicial relief from a decision of the Board of Parole (hereinafter "Board") denying him parole. He contends that (1) the Board improperly designated his case as one within the "original jurisdiction" of the Regional Directors, 28 C.F.R. § 2.17 (1974); (2) the Board's application of the parole policy guidelines, 28 C.F.R. § 2.20, was inconsistent with applicable case law; and (3) he is entitled to immediate release because he is suffering from a fatal disease. An evidentiary hearing was held by this Court and comprehensive briefs have now been filed.

I

On March 6, 1972, the petitioner commenced service of a ten-year sentence imposed by the District Court for the District of New Jersey, Barlow, J., following a conviction for multiple acts of extortion, in violation of the Hobbs Act, 18 U.S.C. § 1951. Soon thereafter, medical examinations revealed that the petitioner was inflicted with polycythemia vera, an incurable form of blood cancer. Upon learning that the petitioner had a terminal illness, Judge Barlow, on June 20, 1973, modified the petitioner's sentence by ordering that he should

become eligible for parole at such time as the Board may determine, pursuant to the provisions of 18 U.S.C. § 4208(a)(2).

On August 28, 1973, petitioner received an initial parole hearing before two hearing examiners of the Board. However, his case was thereafter submitted for an *en banc* consideration of the members of the Board as an "original jurisdiction" matter because of the "national or unusual attention" given to petitioner's criminal activity. See 28 C.F.R. § 2.17(a), (b)(3). On September 24, 1973, petitioner was informed that the Regional Directors decided to continue his incarceration with an institutional review in January, 1976. In addition, the Board instructed the prison officials to notify it if the petitioner's health should reach a critical state. No reasons were given for the denial of parole.

Following a request by Judge Barlow, the Board reopened petitioner's case on March 11, 1975 for an original jurisdiction review on the record. Two months later, the Board reaffirmed its prior decision with these reasons:

> Your offense behavior consisted of multiple separate offenses. The offense was part of an ongoing large scale organized criminal conspiracy, including Interstate Extortion involving conspiracy to obstruct, delay and effect (sic) interstate commerce.

On appeal, the National Appellate Board affirmed the denial of parole, commenting in part that the petitioner's offense behavior was rated as "greatest severity" due to the "magnitude of your involvement and the effect it had on the functioning of a major city because of corruption at a high governmental level."

On August 25, 1975, petitioner received his second parole hearing pursuant to a recently adopted Board practice of conducting review hearings at the one-third point in § 4208(a)(2) sentences. At that hearing petitioner was advised by the hearing examiner panel that his case would be referred to the Regional Director for original jurisdiction processing because of the notoriety surrounding his offense. However,

when the case was considered by the Regional Director, he did not designate it for an original jurisdiction decision but let the alternative decision of the hearing examiners stand as the decision of the Board. That examiner panel decision was the same as all previous orders in the case: continued with an institutional review hearing in January, 1976. The reasons for parole denial were stated as follows:

> Your offense behavior has been rated as greatest severity because your offense consisted of multiple separate offenses. Instant offense was part of a large scale organized criminal conspiracy including interstate extortion and involving conspiracy to obstruct, delay and effect (sic) interstate commerce. You have a salient factor score of 11. . . . You have been in custody a total of 41 months. Guidelines established by the Board for adult cases which consider the above factors indicate a range of unlimited months to be served before release for cases with good institutional program performance and adjustment. After careful consideration of all relevant factors and information presented, it is found that a decision outside the guidelines does not appear warranted. Board guidelines for greatest severity cases do not specify a maximum limit. Therefore, the decision in your case has been based in part upon a comparison of the relative severity of your offense behavior with offense behavior examples listed in the very high severity category.

Subsequently, on September 29, 1975, the Regional Director cancelled the above order and once again designated the case an original jurisdiction matter. On the same date an original jurisdiction order was issued by the Board reaching the same decision as the examiner panel: continued for institutional review hearing in January, 1976. The reasons stated for parole denial were substantially the same as the reasons given for the examiner panel's decision.

## II

The petitioner first attacks the Board's practice of designating cases for "original

jurisdiction" on the basis of the publicity connected with a defendant's arrest, trial and conviction. 28 C.F.R. 2.17(a), (b)(3). He argues that "notorious" prisoners should receive the same procedural treatment for parole purposes as "non-notorious" inmates. The Court disagrees.

It is undisputed that the criminal case in which the petitioner was involved provoked widespread public interest and publicity. He and several prominent public officials of the State of New Jersey, including the Mayor of the City of Newark, were charged in a 66-count indictment with multiple violations of the Hobbs Act in connection with certain municipal projects undertaken by the City. At his trial the petitioner moved for a change of venue and submitted to the trial judge eight volumes of newspaper and magazine clippings to support his claim that pre-indictment publicity had engendered so great a prejudice against him that he could not obtain a fair trial in the District of New Jersey. See *United States v. Addonizio*, 313 F.Supp. 486, 493–494 (D.N.J.), affd. 451 F.2d 49 (3 Cir.), cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

 These circumstances prompted the Board to consider *en banc* petitioner's application for parole. The evidence at the hearing before this Court indicates that the "original jurisdiction" classification is a procedural device to insure that, with respect to certain inmates who apply for parole,[1] the tentative decisions of the two parole examiners in the prison are reviewed at the highest level in the parole process. The substantive standards for parole release remain the same; only the decision-making body differs. It is apparent that the "original jurisdiction" designation provides an effective method to promote public confi-

dence in the parole system by assuring that final parole decisions likely to attract community or national attention are made by the chief administrative officials of the Board of Parole. While it may be true that fewer releases are granted to "original jurisdiction" inmates on their initial applications for parole than other prisoners who are not so classified, the Court is satisfied that this is due to the seriousness and nature of the offenses involved and not the result of any constitutionally proscribed procedure in the decision-making process. Thus, the petitioner has failed to demonstrate that in his case the parole procedure which accompanies an "original jurisdiction" designation constitutes a "grievous loss" which may not be imposed in the absence of additional and separate due process safeguards. Cf. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Cardaropoli v. Norton*, 523 F.2d 990 (2 Cir. 1975). See also *Wiley v. United States Board of Parole*, 380 F.Supp. 1194 (M.D.Pa. 1974).

### III

The petitioner next challenges the validity of the Board's reasons for parole denial. First he contends that, although the policy guideline table rates the crime of extortion as "very high", the Board erroneously placed his offense in the "greatest" category. Since the petitioner has a salient factor score of 11, the "very high" rating calls for a period of incarceration of between 26 and 36 months; but the "greatest" severity category suggests imprisonment beyond 65 months. Thus, petitioner argues, with a

---

1. The four categories of "original jurisdiction" cases are set forth in 28 C.F.R. § 2.17 (1975) as follows:

(1) Prisoners who have committed serious crimes against the security of the Nation, e. g., espionage, or aggravated subversive activity.

(2) Prisoners whose offense behavior (a) involved an unusual degree of sophistication or planning or (B) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

(3) Prisoners who have received national or unusual attention because of the nature of the crime, arrest, trial, or prisoner status, or because of the community status of the offender or his victim.

(4) Long term sentences. Prisoners sentenced to a maximum term of forty-five years (or more) or prisoners serving life sentences.

"very high" category assignment he is entitled to an immediate parole release because he has been in custody over 40 months.

However, the table of severity categories serves only as a guideline. In appropriate circumstances the Board may increase the severity level. 28 C.F.R. § 2.20(d) (1975); *United States v. Manderville*, 396 F.Supp. 1244 (D.Conn.1975); *Battle v. Norton*, 365 F.Supp. 925, 929 (D.Conn. 1973). Under the facts of this case, the Board did not abuse its discretion when it determined that aggravating circumstances merited a severity rating in the "greatest" category.

Second, the petitioner asserts that the Board's failure to notify him until July 30, 1975 that his offense severity was "greatest" deprived him of the opportunity to be heard and to contest that assignment at his parole hearing before the two examiners. The argument is without merit.

Prior to October 1, 1973, the Board was not required to state reasons for parole denial or to advise the inmate of his status under the guidelines, and, accordingly, petitioner did not receive a statement of reasons for the denial of parole in August and September, 1973. See 28 C.F.R. § 2.15, as amended 38 Fed.Reg. 26653 (September 24, 1973). However, in May, 1975, the Board informed the petitioner that he would not be released on parole for various reasons which clearly indicated his case contained "aggravating" circumstances under § 2.20(d), and, in May, 1975, he was expressly notified that his offense was viewed as "greatest" severity. On appeal and later in August, 1975 at his institutional hearing, he had ample opportunity to be heard, to present countervailing evidence, and to challenge fully his classification. More was not required. See *Lupo v. Norton*, 371 F.Supp. 156, 162 (D.Conn.1974).

### IV

Finally, petitioner contends that his short life expectancy renders his parole treatment cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution. At the hearing before this Court, medical testimony was received from two physicians, Dr. Leonard Farber, a specialist in hematology, and Dr. Louis Rogol, Chief Health Officer at the Danbury institution. The testimony as to petitioner's life expectancy was inconclusive. Although Dr. Farber testified to a diagnosis in 1972 which placed petitioner's life expectancy at three to five years, he stated that petitioner could probably live as long as 12 years. The Board is aware of petitioner's condition and has indicated that prison officials should advise the Board if his health reaches a critical stage (Notice of Action, May 23, 1975). Dr. Farber and Dr. Rogol both testified that the course of treatment that petitioner was receiving at Danbury was adequate. Under these circumstances, the Court finds that continued incarceration of the petitioner does not constitute cruel and unusual punishment.

Accordingly, the petition for a writ of habeas corpus is denied; the petition is dismissed.