Eugene HEARN, Petitioner,

v.

W. Raymond NELSON, Warden, F.C.I.
Danbury, Connecticut, and the United
States Parole Commission, Respondents.

Civ. No. B–80–294.

United States District Court,
D. Connecticut.

Aug. 12, 1980.
Supplemental Memorandum Sept. 15, 1980.

## MEMORANDUM OF DECISION

DALY, District Judge.

Pursuant to 28 U.S.C. §§ 2241, 1331 and 1361, petitioner Eugene Hearn seeks a writ of habeas corpus directing his immediate release from confinement on the ground that the Parole Commission has denied him his constitutional rights to due process of law by violating 18 U.S.C. §§ 4206 and 4207 in making and reporting its decisions regarding his parole status.

On February 1, 1975, in the United States District Court for the Eastern District of Pennsylvania (Crim.No. 74–0523), petitioner was found guilty of conspiracy to distribute narcotics in violation of 21 U.S.C. §§ 846 and 843(b). On March 25, 1975, United States District Judge John B. Hannum sentenced petitioner to consecutive three and twelve year terms, with a three year term of special parole [1] and a $25,000 committed fine.[2] Petitioner effectively began serving his sentence on February 1, 1975. He has a prior criminal record, but no prior commitments.

The Parole Commission has given petitioner a salient factor score of 9 ("very good") and has rated his offense severity "high." The Parole Guidelines for an inmate with a salient factor score of 9 and a "high" offense severity rating indicate a term of incarceration of 14–20 months. For an inmate with a salient factor score of 9 and a "Greatest I" severity rating (the worst possible rating for a drug-related offense), the Guidelines indicate a term of 40–52 months. 28 C.F.R. § 2.20 (1979). Petitioner has now been incarcerated for 66 months.

Petitioner has appeared before panels of Parole Commission hearing examiners on four occasions. After his first appearance, petitioner received a Notice of Action dated June 13, 1975, stating: "After careful con-

---

1. The probable illegality of this sentence, *Bifulco v. United States*, —— U.S. ——, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980), is not presently before the Court.

2. Petitioner appears to be indigent, but has not addressed the effect of his status as such upon the scope of relief available to him on the instant petition; the government has been similarly silent.

sideration of all relevant factors and information presented, it is found that a decision outside the guidelines at this consideration does not appear warranted." In October, 1977, at petitioner's second appearance before a panel of examiners, the examiners told petitioner that they would recommend that he be paroled in December, 1977. However, the Regional Commissioners designated petitioner's case one of "original jurisdiction," 28 C.F.R. § 2.17 (1979), and referred it to the National Commissioners for decision.[3] In a Notice of Action dated December 9, 1977, the National Commissioners continued petitioner for a four-year reconsideration hearing in October, 1981. The Notice stated:

> After a review of all relevant factors and information presented, a decision above the guidelines at this consideration appears warranted because your offense was part of a large-scale sophisticated heroin distribution ring as evidenced by the number of co-conspirators involved (at least 7), the hierarchy established in the organization and the magnitude of the narcotics operation.

Petitioner appealed; and the National Commissioners, in a Notice of Action dated April 19, 1978, granted him a rehearing. At the rehearing in June, 1978, the hearing examiners again told petitioner that they would recommend parole, this time in July, 1978. The National Commissioners again denied parole in a Notice of Action on Appeal dated August 10, 1978, which stated: "(A) No other information submitted for requested review was deemed significant

enough to affect the decision. (B) Reasons given support the decision."

Petitioner somehow subsequently obtained a copy of a document signed by the prosecutor of his case, entitled "Form 792 Report on Convicted Prisoner by United States Attorney" and dated April 2, 1975. This form contained various accusations and allegations concerning petitioner which he claims are false.[4] He enlisted the aid of Yale Legal Services Organization, his counsel in the instant case, to prepare for his December 19, 1979, hearing before a panel of examiners. The examiners there for the first time showed petitioner a copy of the Form 792 Report and questioned him concerning the allegations it contained. Petitioner admitted that he had been involved in buying and selling heroin, but denied the remaining allegations of the report. The examiners, apparently more impressed with petitioner's record of institutional adjustment and accomplishment[5] than with the unsubstantiated and contested allegations of the prosecutor's report, recommended that he be paroled on April 18, 1980. The Regional Commissioners again designated petitioner's case one of original jurisdiction and referred it to the National Commission. In a Notice of Action dated January 31, 1980, the National Commissioners continued petitioner to a presumptive parole date of February 1, 1983, stating:

> After review of all relevant factors and information presented, a decision above the guidelines appears warranted because your offense behavior involved the following aggravating factors: your offense

---

3. *See* Government's Response, Exhibits B and C. 28 C.F.R. § 2.17 provides in pertinent part:
   The following criteria will be used in designating cases as original jurisdiction cases:

   .    .    .    .    .

   (2) Prisoners whose offense behavior: (i) Involved an unusual degree of sophistication or planning, or (ii) was part of a large scale criminal conspiracy or a continuing criminal enterprise.

4. *See* n. 13 *infra.*

5. Petitioner has an excellent institutional and work record. Prison staff appraisals of his performance in training programs and on jobs he has held uniformly and enthusiastically rate

him "excellent." He has consistently received excellent progress reports. He has pursued a college education while in prison, having progressed so far in this endeavor that he will be unable to earn any more credits toward his Associate's Degree until he is released. He has been active in an inter-faith religious program while in prison. And he has an excellent post-release plan: his employment upon release appears secure; and his family, church and community are very supportive, as evidenced by over 100 signatures attesting to the proposition that petitioner "will be a conscientious provider for his wife and family, as well as a positive asset to his community."

was part of a large-scale sophisticated heroin distribution ring as evidenced by the number of co-conspirators involved (at least seven), the hierarchy established in the organization, and the magnitude of the narcotics operation.

Petitioner again appealed, and also filed a petition for writ of habeas corpus, which this Court denied without prejudice pending the result of his appeal to the National Commission.

Sometime in the Spring of this year, petitioner obtained a copy of a letter from the Philadelphia Strike Force with attached materials that stated they were prepared by the Drug Enforcement Agency (DEA) from DEA files. The materials contained a description of petitioner's trial and allegations concerning the roles of petitioner and his co-defendants in the conspiracy for which they were convicted and in other alleged criminal activities. Yale Legal Services represented petitioner at the May 6, 1980, hearing before the National Commission on petitioner's national appeal.[6] The Commissioners questioned petitioner's representative only about the allegations contained in the DEA materials, and not about petitioner's pre-sentence report or any other information or recommendations supplied by petitioner's family or prospective employer, the staff at F.C.I. Danbury or the panel of hearing examiners. In a Notice of Action dated May 14, 1980, the National Commission affirmed the decision of January 14, 1980. The new Notice was identical to the Notice of August, 1978. It contained no new information.

Petitioner filed the instant petition on June 11, 1980. The Parole Commission has since reopened his case pursuant to 28 C.F.R. § 2.28(a) (1979), ostensibly to afford him an opportunity to "review and respond to the Strike Force information." The government argues that the Commission's failure to make any earlier disclosure of these materials is purely a procedural defect, which will be cured by the new hearing, and that the Court therefore should reserve decision on the petition "until the Commission has evaluated Hearn's response to the Strike Force information." This argument is without merit, since petitioner already has responded to the allegations contained in the Strike Force materials.

■ The Court's authority to review the Parole Commission's decisions is limited, however.

Congress has given the Parole Commission the sole power to grant or deny parole in the exercise of its discretion. *Billiteri v. Board of Parole*, 541 F.2d 938, 944 (2d Cir. 1976). As applied to an adult offender, the Commission's guidelines merely clarify the exercise of this administrative discretion. *Shepard v. Taylor*, 556 F.2d 648, 654 (2d Cir. 1977). The Commission is not bound to adhere inexorably to the guidelines, *Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977), and its decisions may be either above or below them. *Grasso v. Norton*, [520 F.2d 27, 34 (2d Cir. 1975)].

*Dioguardi v. United States*, 587 F.2d 572, 575 (2d Cir. 1978). Nevertheless, the Parole Commission's discretion is limited by the constitutional concept of due process, *United States ex rel. Sperling v. Fitzpatrick*, 426 F.2d 1161, 1163 (2d Cir. 1970); and to enforce this limitation, the Court "has authority to review a decision by the [Commission] . . . which shows an abuse of discretion . . . ." *Billiteri v. United States Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976).

■ The Parole Commission must consider relevant favorable as well as unfavorable information in making its decisions. 18 U.S.C. §§ 4206, 4207; 28 C.F.R. §§ 2.18, 2.19.[7] It must also provide a prisoner with

---

6. Petitioner has never been allowed to appear in person before the National Commissioners.

7. 18 U.S.C. § 4206 provides in pertinent part:
   (a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

an adequate statement of the reasons for its decision, including reference to the evidence and sources relied upon, if it denies parole. 18 U.S.C. § 4206; 28 C.F.R. § 2.13.[8] And if the Commission wishes to continue an inmate's incarceration beyond the guidelines established for him, it must have and state specific reasons beyond those which brought the prisoner within the guidelines to begin with. *Brach v. Nelson*, 472 F.Supp. 569 (D.Conn.1979); *United States ex rel. Jacoby v. Arnold*, 442 F.Supp. 144 (M.D.Pa.1977); *Randaccio v. Wilkinson*, 415 F.Supp. 612 (D.Conn.1976); *Lupo v. Norton*, 371 F.Supp. 156, 163 (D.Conn.1974).

In this case petitioner claims that the Commission has failed to consider the favorable information available to it in reaching its decision to continue him 76 months beyond his guidelines. The Commission's position apparently is that it has considered such information: its notices of action all have stated that it considered "all

> (1) that release would not depreciate the seriousness of the offense or promote disrespect for the law; and
> (2) that release would not jeopardize the public welfare; . . . such prisoner shall be released.
> 18 U.S.C. § 4207 provides:
> In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
> (2) official reports of the prisoner's prior criminal record, including a report or record of earlier probation and parole experiences;
> (3) presentence investigation reports;
> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge; and
> (5) reports of physical, mental, or psychiatric examination of the offender.
> There shall also be taken into consideration such additional relevant information concerning the prisoner (including information submitted by the prisoner) as may be reasonably available.
> · 28 C.F.R. §§ 2.18 and 2.19 incorporate the language of the above statutes. Section 2.19 provides further:
> (c) The Commission may take into account any substantial information available to it in establishing the prisoner's severity rating, salient factor score, and any aggravating or mitigating circumstances, provided the pris-

relevant factors and information presented." It is not this Court's place to reweigh the evidence the Commission considered, *Richards v. Crawford*, 437 F.Supp. 453, 455 (D.Conn.1977), or to substitute the Court's judgment for that of the Commission, *Billiteri, supra.* But the abundance of information favorable to petitioner and the magnitude of the difference between the period of incarceration the guidelines suggest and the period the Commission has chosen raise a strong inference that the Commission has failed to consider or give any weight at all to favorable information, in violation of 18 U.S.C. § 4207. The boilerplate language in the notices of action, quoted above, does nothing to dispel this inference.

Petitioner next argues that the Commission's statements of its reasons for continuing him beyond his guidelines are inadequate in themselves. He notes correctly that the statements contained in the Commission's notices of December, 1977,

> oner is apprised of the information and afforded an opportunity to respond. If the prisoner disputes the accuracy of the information presented, the Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability. . . .
>
> 8.  18 U.S.C. § 4206 provides in pertinent part:
> (b) The Commission shall furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole · determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial.
> (c) The Commission may grant or deny release on parole notwithstanding the guidelines . . . if it determines there is good cause for so doing: *Provided,* That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.
> 28 C.F.R. § 2.13 implements the above statute with, *inter alia*, the following statement: "[T]he prisoner shall be furnished with . . . the specific factors and information relied upon for any decision to continue such prisoner for a period outside the range indicated by the guidelines."

and January, 1980, do no more than describe the offense for which he was convicted, in the terms that justified his designation as original jurisdiction in the first place.[9] *Cf. Randaccio v. Wilkinson, supra,* 415 F.Supp. at 613–14 (statement reciting terms of 28 C.F.R. § 2.17(b)(2) inadequate to justify decision outside guidelines). Petitioner argues further:

> The statement of reasons is . . . inadequate because it fails to identify what Petitioner *did* to justify incarceration longer than his guidelines. . . . As this Court noted in *Lupo v. Norton,* [*supra,*] . . . "It is simply irrational for seriousness of the offense to be used first to determine the appropriate guideline period and then to be used again as the stated reason for confining a prisoner beyond that guideline."

> . . . . .

> The Commission's Notices of Action in Petitioner's case tell him only that he was convicted of a large-scale sophisticated conspiracy to distribute narcotics (with several co-conspirators and a hierarchy), a fact he cannot contest. The Notices do not explain his specific criminal actions, or role in the conspiracy, or why they justify incarceration for six years beyond his guideline range.

Petitioner's Traverse at 12.

■ This case is not precisely like *Lupo,* since the decision to place petitioner in the "High" severity category apparently was not based on all the factors upon which the Commission relied in taking petitioner back out of the guidelines. A "High" severity opiate offense is one involving "possession with intent to distribute/sale [small scale (e. g., less than 5 grams of 100% pure her-

oin, or equivalent amount) . . . ]." 28 C.F.R. § 2.20. The examiners apparently felt petitioner qualified for this category because the amount of heroin involved in the offense for which he was convicted fell within the above description. The description, however, makes no reference to the sophistication or scale of any conspiracy or other operation that might be involved, factors upon which the Commission may permissibly base a decision. On the other hand, the regulations provide a "Greatest I" severity rating for an opiate offense involving "possession with intent to distribute/sale [*managerial or proprietary interest and very large scale (e. g.,* offense involving more than 50 grams of 100% pure heroin, or equivalent amount)]." *Id.* (emphasis added).[10] This appears to be an accurate description of petitioner's offense as reflected in the questionable documents upon which the Commission appears to have relied without so stating,[11] and which it has been so reluctant to disclose to petitioner. As noted above, if petitioner's severity rating were Greatest I the guidelines would indicate a range of 40–52 months. The Commission has seen fit, however, to double this range in petitioner's case. And it has done so without any explanation of "why . . . petitioner's specific criminal actions justified denial of parole." *Jacoby, supra,* 442 F.Supp. at 149. This course of conduct on the part of the Commission constitutes a violation of 18 U.S.C. § 4206.

■ Finally, the Commission has abused its discretion under 28 C.F.R. § 2.19(c) and (d).[12] Petitioner received the opportunity guaranteed by the regulation to contest the accuracy of the information upon which the Commission relies only because he learned of the information from sources other than

---

9. *Cf.* n. 3 *supra.*

10. The same regulation provides further: "Conspiracy shall be rated for guideline purposes according to the underlying offense behavior if such behavior was consummated. If the offense is unconsummated, the conspiracy will be rated one step below the consummated offense."

11. *But see* n. 13 & acc. text *infra.*

12. For the text of subsection (c), see n. 7 *supra.* Subsection (d) provides in pertinent part: "In evaluating a recommendation concerning parole, the Commission must consider the degree to which such recommendation provides the Commission with specific facts and reasoning relevant to the statutory criteria for parole (18 U.S.C. § 4206) and the application of the Commission's guidelines (including reasons for departure therefrom). *Cf.* n. 13 *infra.*

the Commission. And the Commission's persistence in relying on information that was, for this reason, improperly before it casts serious doubts upon the *bona fides* of its implicit determination that the information "represents the explanation of the facts that best accords with reason and probability," *id.*[13]

■ Since the aforementioned violations by the Parole Commission of applicable statutes and its own regulations constitute denials of petitioner's due process rights, *see Drayton v. McCall*, 584 F.2d 1208, 1214–16 & n. 18 (2d Cir. 1978), the petition may be granted.

Accordingly it is hereby ORDERED that a writ shall issue discharging petitioner from custody forthwith [14] unless within 21 days of this order the Commission shall provide petitioner with a statement of the reasons for its decision that is sufficient under the statutes, regulations and principles discussed herein, and shall file with the Court a copy of such statement, if any.

## SUPPLEMENTAL MEMORANDUM

■ This opinion supplements the Court's earlier ruling of August 12, 1980 wherein it held that:

> A writ shall issue discharging petitioner from custody forthwith unless within 21 days of this order the Commission shall provide petitioner with a statement of the reasons for its decision that is suffi-

cient under the statutes, regulations and principles discussed herein, and shall file with the Court a copy of such statement, if any. [Footnote omitted].

*Hearn v. Nelson et al.*, 496 F.Supp. 1111, at 1117, (D.Conn. 1980). A statement purportedly complying with the above was filed by the defendant, United States Parole Commission, at the "eleventh hour" on September 2, 1980. The Court ordered and held a hearing on September 4, 1980 at which the petitioner was present. The purpose of the hearing was to permit the parties to argue the adequacy of the notice of action which rejected the Parole Commission hearing examiners' recommendation that petitioner be paroled.

The Court has carefully reviewed the Parole Commission's notice of action in light of its earlier decision, arguments of counsel at the September 4, 1980 hearing and both sides' post-hearing Memoranda and concludes that for the reasons set forth in petitioner's post-hearing memorandum in support of the application for a writ of habeas corpus the notice of action is inadequate and the writ should issue forthwith.

In addition to the reasons set forth in petitioner's memorandum the Court finds persuasive a further piece of information, not available to the petitioner, evidencing the arbitrary and illegal nature of the Parole Commission's action. During oral ar-

---

13. The doubts the Court entertains in this context are increased by the nature of the materials in question. The United States Attorney's report (Form 792) contains multiple hearsay and reference to a report by a unidentified informant whose reliability (assuming his existence) is not discussed, let alone supported. The latter item does not meet a "probable cause" standard, *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), nor *a fortiori* the "preponderance of the evidence" standard by which the Parole Commission is bound, 28 C.F.R. § 2.19(c). The report also impeaches its own credibility by warning that petitioner "could pose problems to any custodial institution in organizing various types of misconduct," monition belied by petitioner's exemplary conduct throughout his 66 months of incarceration in four different institutions. The Strike Force

materials apparently were prepared for use at a parole hearing involving one of petitioner's co-defendants. The "information" they contain concerning petitioner consists of two short paragraphs out of 21 pages, appears to have been extrapolated from two intercepted telephone calls, and does not in any way connect petitioner with the alleged violent criminal activities of the organization described.

14. This Order is subject, of course, to petitioner's compliance with any procedures routinely and lawfully applicable to prisoners liable for committed fines. And the Court does not intend to preclude the Commission from holding the remedial hearing it presently contemplates, so long as the Commission complies in all respects with this Order and the petitioner does not remain incarcerated for the sole purpose of appearing at the hearing.

gument on September 4, 1980 the Government stressed the fact that petitioner received the same sentence from Judge Hannum as his co-defendants Gregory Trice and William Jefferson and that all three were being treated equally by the Parole Commission. The Court requested the Government to provide information concerning Mr. Trice and Mr. Jefferson relating to their presumptive parole dates, lengths of sentence and institutional behavior records. Counsel for the Government states in his brief that:

> The undersigned has been informed that Jefferson has a presumptive parole date in September 1983 and that Trice's release date is scheduled in January 1983. Thus, Jefferson is presently scheduled to serve 103 months, while Trice will serve 97 months. Hearn, whose presumptive parole date is in February 1983, is scheduled to serve 96 months. Both Jefferson and Trice have salient factor scores of 6 and have been designated cases of original jurisdiction. Trice's record is free of incident reports, while Jefferson has one incident of misconduct noted by the Commission.

Government's Post-Hearing Memorandum, filed Sept. 8, 1980 at 5. The Government did not provide the Court with records of the institutional behavior of petitioner's co-defendants, making them in any way comparable to the exemplary conduct of Mr. Hearn, or state whether Mr. Trice or Mr. Jefferson were ever recommended for early parole by the Parole Board hearing examiners. Taking the information provided, however, the Court notes that Mr. Trice and Mr. Jefferson have salient factor scores of 6 compared to petitioner's score of 9. Assuming all other factors to be equal, Mr. Trice and Mr. Jefferson should serve 12 months longer than the petitioner according to the guidelines for parole decisionmaking. 28 C.F.R. § 2.20 (1979). According to the Government Mr. Trice will serve one month longer than the petitioner and Mr. Jefferson seven months longer. Unlike the Government the Court does not regard seeming equality of treatment of co-defendants as an indication here of equitable treatment for the petitioner.

The writ shall issue.

It is So Ordered.