**Virgil ALESSI, Petitioner,**

v.

**Dale THOMAS, Warden, Metropolitan Correctional Center, Benjamin F. Baer, Chairman, United States Parole Commission, and United States Parole Commission, Respondents.**

**No. 85 Civ. 5651 (JFK).**

United States District Court, S.D. New York.

Oct. 25, 1985.

Fisher & Ely, P.C., New York City, for petitioner; David W. Ely, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. New York City, for respondents; Noel Anne Ferris, of counsel.

## OPINION and ORDER

KEENAN, District Judge:

Petitioner Virgil Alessi ("Alessi") petitions this Court for a writ of habeas corpus. Alessi, who is incarcerated at the Metropolitan Correctional Center in New York City, asserts that the revocation of his parole for violation of a parole condition was without basis and unlawful. He argues that his conduct did not constitute "association" within the meaning of the condition. Furthermore, he claims that the parole condition, which read, "[y]ou shall not associate with persons who have a criminal record unless you have permission of your probation officer," was unconstitutionally vague as applied to him. Thirdly, Alessi asserts that the decision to incarcerate him for an additional period of thirty

months prior to a presumptive parole, a period greater than the nine-month period set forth in the United States Parole Commission's ("Commission's") guidelines, was arbitrary, capricious and an abuse of the Commission's discretion.

Finally, Alessi contends that the Commission's February 21, 1985 remand of Alessi's case to the regional Commissioner violated his right to due process of law. Alessi also seeks release on bail pending the determination of the instant petition.

For the reasons set forth below, the Court will not issue a writ of habeas corpus. However, the case is remanded to the Commission for redetermination of the appropriate period of incarceration prior to Alessi's parole.

## FACTS

The facts pertaining to Alessi's conviction, parole and parole revocation, as well as his prior application for a writ of habeas corpus, were set forth in this Court's June 12, 1985 Opinion and Order denying the writ on grounds of failure to exhaust administrative remedies. *Alessi v. Thomas*, No. 85–4053 (JFK) (June 12, 1985 S.D.N.Y.). For the purposes of completeness and clarity, these facts are repeated here.

Alessi was convicted of possession with intent to distribute heroin in the Southern District of New York and on January 5, 1977 was sentenced to a prison term of 13 years to be followed by 6 years on special parole. Alessi was first released on parole by court order on October 26, 1982, but was returned to custody on August 24, 1983 upon the reversal of the order by the Court of Appeals for the Second Circuit. Alessi was again released on parole on September 30, 1983. He was arrested and detained for a parole violation on October 23, 1984, and remains in federal custody.

Alessi's September 30, 1983 parole was conditioned on eleven enumerated points which were listed on the Certificate of Parole (Exhibit 1 to Declaration of Noel Anne Ferris, August 8, 1985) ("August Ferris Declaration"). Number 10 among them was the prohibition against "association" with persons having a criminal record, cited *supra* at 1. Alessi admits that he received numerous telephone calls from four individuals with criminal records while on parole between February, 1983 and June, 1984.[1]

In September, 1984, Alessi's probation officer advised the Regional Commissioner of the Parole Commission by letter that Alessi was associating with other convicts (Exhibit 3 to August Ferris Declaration). The Commission issued a parole violation warrant against Alessi on October 15, 1984 (Exhibit 5 to August Ferris Declaration). The warrant was executed on October 23, 1984. On November 14, 1984 a preliminary hearing was held on the issue of revocation of Alessi's parole. The Regional Commissioner found probable cause to hold peti-

---

1. The callers are identified as Frank D'Amato, Michael Clemente, James Heimerle and Rocco Evangelista. D'Amato and Evangelista had previously been co-defendants with Alessi on a narcotics trafficking charge. Charges against D'Amato and Evangelista were ultimately dropped, while Alessi pleaded guilty to one count of conspiracy (Exhibit 11 to August Ferris Declaration). Evangelista is a lifelong friend of Catherine Cross, Alessi's common-law wife. Alessi asserts that D'Amato called him in order to make contact with an attorney previously retained by Alessi. The calls from Clemente were purportedly in connection with another lawyer's activities on behalf of Clemente. Heimerle had been incarcerated with Alessi and allegedly called him to discuss legal research he had performed for Alessi, as well as to discuss retention of an attorney (Affidavit of Ivan S. Fisher, July 24, 1985, ¶ 5) ("July Fisher Affidavit").

Telephone records supplied to the Nassau County District Attorney's Office indicate that from February, 1983 through June, 1983, Alessi received at least 15 calls from Evangelista. From January, 1984 through June, 1984 an additional 23 calls were received. In the period from January, 1983, through May, 1983, 12 calls from Evangelista's home were made to the restaurant where Alessi worked (Exhibit 3 to August Ferris Declaration).

Moreover, from November, 1983 to June, 1984, Alessi received and accepted a total of 41 collect calls from D'Amato, Clemente and Heimerle.

D'Amato was apparently later convicted on a different charge. He is currently incarcerated at a federal correctional facility, as are Clemente and Heimerle. Evangelista is not currently incarcerated (Exhibit 3 to August Ferris Declaration).

tioner for a final revocation hearing. Alessi was informed of this decision by letter dated November 30, 1984 (Exhibit 7 to August Ferris Declaration).

The final revocation hearing was held on January 4, 1985 at the Metropolitan Correctional Center ("MCC") in New York, New York. The hearing examiners prepared a report (Exhibit 8 to August Ferris Declaration) and concluded that Alessi's parole be revoked, that the time served on parole should be credited to Alessi's sentence, but that he would receive an additional five months for the violation.

The Regional Commissioner reviewed and confirmed the recommendations including the five month term of imprisonment suggested by the panel and also adopted by the Administrative Hearing Examiner. By Notice of Action dated January 17, 1985, Alessi's case was referred to the National Commissioners for decision, pursuant to 28 C.F.R. § 217-07 (Exhibit D to Affidavit of Ivan S. Fisher, July 24, 1985) ("July Fisher Affidavit").

While the case was before the National Commissioners, an Assistant United States Attorney, at the request of the Chief Analyst, National Appeals Board, (Exhibit 10 to August Ferris Declaration) sent a Form 792 Report on Convicted Prisoner by United States Attorney from the Southern District of New York ("Form 792 Report") to the National Commissioners (Exhibit 11 to August Ferris Declaration). The report was signed by Rhea Kemble Brecher, Chief of the Narcotics Unit, and was based upon a review of Alessi's file by a paralegal in the United States Attorney's Office, as well as on conversations between the paralegal and probation officers.

Alessi's case was remanded to the Regional Commissioner for rehearing on the basis of Ms. Brecher's submission (Exhibit F to July Fisher Affidavit). On or about May 4, 1985,[2] Alessi's case was reheard by the panel examiners. Alessi was invited to respond to the Form 792 Report. No new evidence was submitted except an affidavit prepared by Alessi's previous attorney (Exhibit G to July Fisher Affidavit)[3] and a transcript of the first revocation hearing. The panel found that Alessi had violated his parole. It recommended revocation of parole, the credit of time spent on parole to Alessi's sentence, and that Alessi serve thirty months for the violation prior to presumptive parole (Exhibit 14 to August Ferris Declaration).

Alessi's file was reviewed in the Regional Office by the Administrative Hearing Examiner. The Hearing Examiner adopted the panel's recommendations and endorsed them to the Regional Commissioner. The Regional Commissioner reviewed the recommendations and the record in support and agreed with all of the recommendations, including the thirty month term of imprisonment. The case was then referred to the National Commissioners (Exhibit 15 to August Ferris Declaration).

Before the Commission had an opportunity to rule in Alessi's case, Alessi filed his first petition for a writ of habeas corpus in the Southern District of New York, in which he challenged his parole revocation and sought release on bail. On June 12, 1985, this Court dismissed the petition on the basis of Alessi's failure to exhaust administrative remedies. The Court also denied Alessi's application for bail. *Alessi v. Thomas, supra* at 3.

By Notice of Action dated June 13, 1985, four members of the Commission voted unanimously to revoke Alessi's parole and imposed a thirty month term of imprisonment (Exhibit J to July Fisher Affidavit). Alessi's appeal to the full Commission (Exhibit K to July Fisher Affidavit) resulted in an affirmance in all respects on the June 13 Notice of Action, in a second Notice of Action dated July 22, 1985 (Exhibit 17 to

---

**2.** Petitioner gives a May 4, 1985 date for the hearing; respondent gives a date of May 6, 1985.

**3.** Respondents state in their papers that two affidavits were submitted. The second affidavit is that of Anthony Prudenti, Alessi's employer (Attachment to Exhibit 14 to August Ferris Declaration).

August Ferris Declaration) ("the Notice of Action"). Alessi thus fully exhausted his administrative remedies. The instant petition for a writ of habeas corpus was filed on July 24, 1985.[4]

## DISCUSSION

1. *The Relevant Acts Constituted "Association".*

█ Alessi claims that the more than forty telephone calls which he had with convicted felons do not constitute "association" as proscribed in parole condition 10 ("the condition"). He asserts that the telephone calls with the four callers were too "fleeting," *Birzon v. King*, 469 F.2d 1241 (2d Cir.1972), or not "planned or prolonged" so as to constitute "association". *Arciniega v. Freeman*, 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971). The Court disagrees. Alessi accepted the charges for more than forty collect calls from people whom he admits he knew had criminal records. The calls were placed over a period of fifteen months.[5] Based on these facts, the Court finds that the contacts were not "fleeting", but rather, sustained and extensive.

Alessi's invocation of the Supreme Court's language in *Arciniega*, in which it was stated:

> [w]e do not believe that the parole condition restricting association was intended to apply to incidental contacts between exconvicts in the course of work on a legitimate job for a common employer...

is inapposite. *Arciniega* at 4, 92 S.Ct. at 22. Clearly, Alessi was not forced to encounter the four callers in the course of work on a legitimate job. Rather, he received phone calls from a distance which are not alleged to have had any connection

to his own work. Moreover, and more significantly, Alessi accepted the collect calls which he could easily have rejected, thereby elevating the contacts from "incidental" to purposeful. Whether he placed the calls or merely accepted the charges is an irrelevancy. The pertinent point is that Alessi intentionally availed himself of the opportunity to make contact with the four parties. The Court concludes, therefore, that Alessi's conduct constituted "association" within the meaning of the condition.[6] *See also United States v. Albanese*, 554 F.2d 543 (2d Cir.1972).

2. *The Definition of "Association" was not Vague so as to be Unconstitutionally void.*

Alessi argues that since he "did not know, could not have known, and was in fact never told that the receipt of telephone calls was 'association' within the meaning of the parole conditions, the condition is unconstitutionally vague as applied to him," (Memo in Support, p. 14). The Court is not persuaded.

While acknowledging that Alessi's probation officer stated that he never specifically instructed Alessi not to "telephonically communicate," (Exhibit B, p. 16 to July Fisher Affidavit), the Court notes the numerous statutory and case law examples in which phone contacts are held to constitute "association". For example, federal statutes recognize that criminal activity can be planned through use of the telephone, and, in fact, the use of the telephone for the planning of illegal acts can be, itself, a crime. *See, e.g.,* 18 U.S.C. § 793 (espionage); 18 U.S.C. § 875 (extortion); 18 U.S.C. § 1343 (wirefraud); 18 U.S.C. § 2101 (inciting riots). Thus, the United States Code is replete with statutes which

---

4. Alessi's petition includes a prayer that he be released on bail pending a decision on the petition. The Court has not seen fit to award this relief, and, in light of the instant decision, determines that the request for bail pending decision is now moot.

5. There are no records before the Court indicating the duration of the calls.

6. Alessi's statements, unsupported by documentary evidence, that he made "small talk before giving the phone over to the individual the caller wished to speak to" (Memo in Support, p. 13), or that he merely conveyed messages from inmates to their lawyers, does not dissuade the Court from finding that "association" took place. The frequency of the contacts and the volitional aspect of accepting the charges militate toward a finding of "association".

hold phone contacts to be unlawful if linked to criminal activity. Furthermore, the Court notes the fact that the telephone is a commonplace means of communicating in this modern age, and has altered the meaning of "association", accordingly. *See, e.g., Calavo Growers of California v. Belgium,* 632 F.2d 963, 969 (2d Cir.1980), Newman, J., concurring. Alessi cannot credibly claim that he could not imagine "association" to include phone conversations, when the Code contains examples of prohibited phone contacts and daily life is so intricately linked by the telephone.

■ Further, telephone contacts have been held to constitute "association" sufficient to uphold a revocation of parole. In *Cataldo v. Warden, MCC,* No. 85–5737 (WK), (August 1, 1985, S.D.N.Y.), Judge Peter K. Leisure dismissed from the bench a petition for habeas corpus in which the parolee denied having had telephone conversations with persons having criminal records and incarcerated prisoners, but where records documented that calls had been made. Clearly, telephone contacts are among the types of conduct that the non-association condition sought to restrict. Alessi should have been aware of the numerous and not unusual situations in which phone contacts constitute proscribed conduct. He does not convince the Court that the condition was unconstitutionally vague as it applied to him.

3. *The Decision to Exceed the Commission's Sentencing Guidelines was an Abuse of Discretion.*

Alessi argues that the Commission's decision to incarcerate him for thirty months was not based on an adequate ground, was arbitrary and capricious, and constituted an abuse of discretion, in that the sanctions imposed on him exceeded those allowable under the applicable administrative guidelines.

The applicable parole guidelines are set forth at 28 C.F.R. § 2.21(a). This section states, "[i]f revocation is based upon administrative violation(s) only (i.e., violations other than new criminal conduct,) the customary time to be served before release shall be [less than or equal to] 9 months." The section further provides that "[a] decision outside these guidelines may be made when circumstances warrant." 28 C.F.R. § 2.21(c). It has been established that deviation from the guidelines is permissible if the Commission "determines there is good cause for so doing." *Bialkin v. Baer,* 719 F.2d 590 (2d Cir.1983). 18 U.S.C. § 4206(c).

■ The concept of reviewable "good cause" has been held to include any "especially mitigating or aggravating circumstances in a particular case." 28 C.F.R. § 2.21(c); *Bialkin* at 594. Further, as the legislative history indicates, deference is given to the Commission's "broad discretion" as to what constitutes "good cause." H.R.Rep. No. 838, 94th Cong.2d Sess. 27, *reprinted* in 1976 U.S.Code Cong. & Ad. News 335. Only an "irrational," or unreasonable decision, or an abuse of discretion by the Commission is subject to review. *Iuteri v. Nardoza,* 732 F.2d 32 at 37 (2nd Cir.1984); *Alessi v. Quinlan,* 711 F.2d 497, 500 (2d Cir.1983).

■ The Court finds that the Commission's decision to incarcerate Alessi for thirty months, more than three times the suggested period of nine months found in the guidelines, was so irrational as to require a remand for redetermination of sentence.

Though the Court's scope of review is circumscribed, case law in the analogous area of initial parole determinations states that "to justify a decision outside the guidelines, the reasons given in the notice of action must stand apart from the factors already considered in determining the severity rating." *Baker v. McCall,* 543 F.Supp. 498, 500 (S.D.N.Y.1981), *affirmed,* 697 F.2d 287 (2d Cir.1982). Similarly, in *Lupo v. Norton,* 371 F.Supp. 156, 163 (D.Conn.1974) the court stated:

It is simply irrational for seriousness of the offense to be used first to determine the appropriate guideline period and then to be used again as the stated reason for

confining a prisoner beyond that guideline.

Cited in *Brach v. Nelson,* 472 F.Supp. 569, 574 (S.D.N.Y.1979). Such "impermissible double counting" thus exists when the Commission "uses the same criteria to determine both the guideline period and whether to extend a prisoner's parole date beyond the guideline period." *Alessi v. Quinlan,* 563 F.Supp. 911, 912 (S.D.N.Y. 1982), *Hearn v. Nelson,* 496 F.Supp. 1111, 1115–1116 (D.Conn.1980).

In the instant case, the Commission stated in its Notice of Action that:

> a decision above the guidelines appears warranted because your violation behavior involved the following aggravating factors: you have demonstrated a total disregard for your conditions of parole. Your irresponsibility is reflected in the fact that you accepted no less than forty (40) collect calls from convicted felons confined at Bureau of Prisons facilities at Danbury, Connecticut and Otisville, New York. This serious violation is in addition to the fact that you have also been in contact with person(s) under investigation. *"Association" is violation of parole.*

(Exhibit 16 to August Ferris Declaration).

Thus, it appears that the Commission felt it had found reasons "stand[ing] apart from the factors already considered in determining" the breach of a parole condition. The Court cannot find a rational basis for this determination. The Court, while not "second-guessing" the finding of "total disregard", *Bialkin* at 593, determines that the violation itself is not sufficiently separate from the supposed "aggravating factors" to rationally justify the determination that "good cause" existed for imposing a sentence outside the guidelines.

The Commission stated, and underlined for emphasis, that "association is violation of parole." This clearly constituted the basis for the Commission's determination of the relevant guideline period, 28 C.F.R. § 2.21(a). The Commission also found that, as an "aggravating factor," Alessi had "demonstrated a total disregard for [his] conditions of parole." The Court notes that, except for the "association" itself, it is unable to determine any act indicating such "total disregard." The respondents suggest various rationales for the Commission's finding of "total disregard," the first of which is the "nature and frequency of the contacts." (Respondents' Memo in Support, p. 20). However, "the nature of the contacts and the frequency with which they occurred" were facts considered in the selection of the relevant guideline. (Respondents' Memo in Support, p. 20). Indeed, if not for the nature and frequency of the phone calls, a violation would not have existed. *See supra* at 593. The Commission's second suggested "aggravating factor," that of "irresponsibility," is similarly inseparable from the underlying violation. Alessi's acts of "association" were arguably irresponsible. However, the Commission fails to point to any irresponsible acts other than the "associations" themselves, and indeed, in the Notice of Action links the "irresponsibility" to the fact that Alessi accepted the subject phone calls.

The Notice of Action alludes to a third possible "aggravating factor," the fact of Alessi's having "been in contact with person[s] under investigation." (Exhibit J to July Fisher Affidavit). This asserted fact also appears in the May 17, 1985 Memorandum of Regional Commissioner Daniel R. Lopez (Exhibit 15 to August Ferris Declaration). The source of the assertion is the Form 792 Report submitted by Rhea Kemble Brecher (Exhibit 11 to August Ferris Declaration).[7] Without reevaluating the evidence considered by the Commission, the Court notes that it cannot determine how this fact can be separated from the underlying fact of "association" with the convicted felon. Nor can the Court determine on what basis association with a party under

---

7. Brecher states that an assistant parole officer "became aware of a local investigation into the recent activities of ROCCO EVANGELISTA" (emphasis in original). There is no indication that Alessi was aware that such an investigation was in progress.

investigation constitutes an "aggravating factor," when Alessi was not necessarily aware that such investigation was in progress or such action prohibited.

Thüs, it appears that the Commission used the fact of "association" first to determine the appropriate guideline period and then ... as the stated reason for confining [the] prisoner beyond that guideline." *Lupo* at 163. Since such "impermissible double counting" is "simply irrational", *Lupo* at 163, the Court finds that the decision to exceed the guidelines was not based on "good cause." [8]

### CONCLUSION

■ When faced with a failure by the Commission to exercise proper discretion in the parallel area of initial parole decisions:

the only remedy which the [district] court can give is to order the Board to correct the abuses or wrongful conduct within a fixed period of time, after which, in the case of non-compliance, the court can grant the writ of habeas corpus and order the prisoner discharged from custody.

*Billiteri v. United States Board of Parole,* 541 F.2d 938, 944 (2d Cir.1976). This Court has no power to order Alessi released on parole, such power having been vested by Congress in the "sound discretion of the Parole Board." *Billiteri* at 944 (cites omit-

ted). Thus, the Court having found that the Commission based its decision to exceed the guidelines on an impermissible ground, it can simply order the Commission to reconsider its determination of the appropriate period of incarceration for Alessi's violation of the condition. Accordingly, it is hereby ordered that the case be remanded to the Commission for a redetermination of the sentence. The Commission shall determine such new sentence within ninety days of the date of this opinion and order. Failure of compliance will result in issuance of the writ of habeas corpus.[9]

SO ORDERED.

---

**8.** Respondents also suggest that a "relationship" between the subject violation and prior crimes indicated an additional aggravating factor, that of "ongoing nature" of the violation. (Respondents' Memo, p. 20–21.) *See Bialkin, supra.*

The instant offense of "association", however, was not "related" to Alessi's prior convictions so as to establish the separate aggravating factor, that of "ongoing nature" of the violation. *Bialkin, supra.* While there was a "relationship" between the violative phone calls and Alessi's prior convictions, based on the participation of D'Amato and Evangelista in both matters, this fact alone fails to comprise an "aggravating factor" constituting "good cause" for exceeding the guidelines. Alessi's phone calls, although a *per se* violation of parole, were not shown in the record to have been concerned with drug-trafficking or conspiracy, and cannot be seen as "related" or as a "similar offense" simply because they were held with D'Amato and Evangelista. The Commission had no evidence be-

fore it upon which to base a conclusion of relationship of the calls to an earlier, similar offense.

In any event, this purported "aggravating factor" not having been cited by the Commission itself in its Notice of Action, it cannot serve as a basis for the Commission's granting or denying release on parole. 18 U.S.C. § 4206(c). This section reads as follows:

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

**9.** Alessi's third claim having proven dispositive of this application, the Court need not proceed to the fourth, constitutional claim.