634 S.E.2d 653

**The STATE, Respondent,**

v.

**Justin Lamar ALLEN, Appellant.**

**No. 26204.**

Supreme Court of South Carolina.

Heard May 4, 2006.

Decided Aug. 21, 2006.

Robert M. Dudek of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, and E. Charles Grose, Jr., of Greenwood, for Appellant.

J. Benjamin Aplin of the South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for Respondent.

Acting Justice MANNING:

Justin L. Allen (Appellant) challenges the circuit court judge's decision to revoke his probationary sentence. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was sentenced in 2002 to an aggregate term of seven years in prison on drug-related convictions, suspended on the service of one year and three years' probation. Appellant was released from prison on probation in 2003.

Police responded to a shooting in the early morning hours of January 5, 2004, at an apartment complex in Greenwood. An agent of the South Carolina Department of Probation, Parole and Pardon Services issued a warrant for Appellant's arrest based on his involvement in events immediately following the shooting. The agent charged Appellant with violating several conditions of his probation, including associating with a person who has a criminal record.

A police officer testified at the revocation hearing that a witness stated, soon after hearing gunshots, he saw two men help an apparent shooting victim get into a yellow Cadillac which then drove away. The witness did not identify the men. The officer testified a hospital security videotape showed Appellant getting out of the Cadillac at the emergency room entrance and entering the hospital. Appellant did not remain at the vehicle when he apparently heard or noticed approaching police, but entered the hospital's emergency room and departed through another door. Police caught the other suspect in the vehicle, Nicholas Sanders, who was armed with a handgun, when he tried to flee after speaking with an officer near the vehicle. The victim, Lawson Hawkins, died of his wounds at the hospital.

A SLED agent testified the fingerprints of Appellant and Sanders were found on the Cadillac's exterior. No fingerprints were found on the interior of the car. Police found over a half of an ounce of cocaine and a handgun inside the car while searching it.

Documents found in the vehicle contained Appellant's name. A police officer testified the vehicle was registered in the name of Appellant's grandfather. The officer testified Appel-

lant verbally admitted driving the vehicle that night and "thought he was there at the scene when [the victim] got shot." Appellant's probation officer testified that Appellant, when asked about associating with Sanders, stated "he just took [Sanders] to the hospital that night, or that was his brother got shot and he just took him to the hospital." Sanders was on probation at the time as a result of previous convictions for unlawful sale of a pistol and a drug-related offense.

Appellant did not testify at the revocation hearing, but invoked his Fifth Amendment right to remain silent because he had been charged with possession of cocaine with intent to distribute, unlawful possession of a firearm, and attempted armed robbery. The crimes allegedly occurred on the night of the shooting.[1]

The trial court ruled Appellant had violated several conditions of his probation, including associating with Sanders, who has a criminal record. The trial court noted Appellant had not offered any evidence contradicting the State's case, including any explanation of his actions in taking the shooting victim to the hospital or his furtive departure from the hospital. The trial court revoked Appellant's probation and activated the remaining six years of the 2002 sentence, with probation terminating upon service of the sentence.

We certified this case for review on the motion of the Court of Appeals pursuant to Rule 204(b), SCACR. Appellant raises several issues, but we find it necessary to address only one:

---

1. The trial court declined to continue the revocation hearing until the criminal charges against Appellant were resolved. This ruling was permissible because the State did not attempt to revoke Appellant's probation based solely on those charges. *See State v. Gleaton*, 172 S.C. 300, 304–05, 174 S.E. 12, 14 (1934) (stating that, when issue is whether probationer has committed a later crime which should result in revocation of probation, trial court may determine probationer's guilt on the charge, or impanel a jury to decide the issue, or hold the revocation matter in abeyance until the probationer is tried on the charge in the usual course, with the final option as the preferred and safest course to pursue); *State v. Williamson*, 356 S.C. 507, 510–12, 589 S.E.2d 787, 788–89 (Ct.App.2003) (applying same principles to hold that trial court properly revoked defendant's probation where, although defendant had not yet been tried on assault charge, record contained sufficient evidence that defendant committed criminal offense by assaulting his mother).

Did the trial court abuse its discretion in revoking Appellant's probation because he associated with a person who has a criminal record, a condition which is so overly broad that it violates due process?

## STANDARD OF REVIEW

The determination of whether to revoke probation in whole or part rests within the sound discretion of the trial court. *State v. Miller,* 122 S.C. 468, 474–75, 115 S.E. 742, 745 (1923); *State v. Proctor,* 345 S.C. 299, 301, 546 S.E.2d 673, 674 (Ct.App.2001); S.C.Code Ann. § 24–21–460 (1989). The trial court must determine whether the State has presented sufficient evidence to establish that a probationer has violated the conditions of his probation. *State v. King,* 221 S.C. 68, 73, 69 S.E.2d 123, 125 (1952); *State v. White,* 218 S.C. 130, 135, 61 S.E.2d 754, 756 (1950); *State v. Hamilton,* 333 S.C. 642, 648–49, 511 S.E.2d 94, 97 (Ct.App.1999). "While probation is a matter of grace, the probationer is entitled to fair treatment, and is not to be made the victim of whim or caprice." *White,* 218 S.C. at 136, 61 S.E.2d at 756.

An appellate court will not reverse the trial court's decision unless that court abused its discretion. *White,* 218 S.C. at 135, 61 S.E.2d at 756; *Hamilton,* 333 S.C. at 647, 511 S.E.2d at 96. An abuse of discretion occurs when the trial court's ruling is based upon an error of law, such as application of the wrong legal principle; or, when based upon factual conclusions, the ruling is without evidentiary support; or, when the trial court is vested with discretion, but the ruling reveals no discretion was exercised; or when the ruling does not fall within the range of permissible decisions applicable in a particular case, such that it may be deemed arbitrary and capricious. *Fontaine v. Peitz,* 291 S.C. 536, 539, 354 S.E.2d 565, 566 (1987); *S.E.C. v. TheStreet.Com,* 273 F.3d 222, 229 n. 6 (2d Cir.2001).

## LAW AND ANALYSIS

A condition of Appellant's probation, included on the standard probation form he signed, stated in pertinent part, "I shall not associate with any person who has a criminal record." Appellant argues the trial court erred by revoking his proba-

tion by finding he associated with Sanders, who has a criminal record. It was necessary for Appellant to associate with Sanders in order to help place a shooting victim in the Cadillac and drive him to the hospital. Furthermore, relying on *Beckner v. State*, 296 S.C. 365, 373 S.E.2d 469 (1988), Appellant contends this condition violates due process and is generally unenforceable because it is overly broad. Appellant asserts the condition would, for example, prohibit someone from associating with a spouse or relative who has a criminal record, or from working at a place which employed anyone with a criminal record.[2]

The State argues this condition is authorized by statute and reasonably furthers the goals of rehabilitating a probationer and protecting the public. The State relies on South Carolina Code Ann. § 24–21–430(3) (Supp.2005), which provides that a probationer shall "avoid persons or places of disreputable or harmful character." The State does not address whether the condition is overly broad as a general rule, but asserts the trial court did not abuse its discretion in applying the condition under the facts of Appellant's case.

We have found no South Carolina authority directly on point and only two South Carolina cases discussing the validity of "no-association" probation conditions. In *Beckner*, a PCR petitioner challenged a condition that he not "be in a place of business that sells alcohol." We struck down the condition as unreasonable, finding it would prohibit the petitioner from entering or working in practically every grocery or convenience store, as well as many restaurants. The burden imposed on the petitioner was greatly disproportionate to any rehabilitative function the condition might serve. *Beckner*, 296 S.C. at 366, 373 S.E.2d at 469–70.

In *State v. White*, 218 S.C. 130, 61 S.E.2d 754 (1950), this Court considered the validity of a condition that directed the probationer to "avoid persons or places of disreputable or harmful character." The probationer operated a restaurant at the state fairgrounds near Columbia, an establishment which

---

2. Appellant does not explicitly cite the Due Process Clause or freedom of association principles based on the First Amendment, but his arguments implicitly are grounded in those provisions. *See* U.S. Const. amends. I and XIV, § 1; S.C. Const. art. I, §§ 2 and 3.

sold beer and included a large room between the restaurant and kitchen where illegal gambling occurred. The evidence revealed the probationer was aware of illegal gambling on his premises, apparently tolerating the activity even if he was not an active participant. The Court rejected the probationer's argument he was not on notice of a potential violation because probation officers had not warned him to avoid that particular location, explaining the record showed the probationer knew he was required to avoid such sites and activities. The Court upheld the trial court's decision to revoke his probation. *White,* 218 S.C. at 136–41, 61 S.E.2d at 757–59.

The Legislature has set forth certain conditions of probation which may be imposed by the court, and the court has the discretion to impose additional or specific restrictions within limits. S.C.Code Ann. § 24–21–430 (Supp.2005) (listing thirteen conditions of probation and stating "[t]he court may impose by order duly entered and may at any time modify the conditions of probation and may include among them" the listed conditions or others not prohibited by this section); *State v. Brown,* 284 S.C. 407, 410, 326 S.E.2d 410, 411 (1985) (holding trial courts are "allowed a wide, but not unlimited, discretion in imposing conditions of suspension or probation and they cannot impose conditions which are illegal and void as against public policy"); *Henry v. State,* 276 S.C. 515, 280 S.E.2d 536 (1981) (holding trial court lacked authority to impose banishment from state if probation was revoked as a condition of probation, even though defendant appeared to agree to the sentence); *State v. Brown,* 349 S.C. 414, 563 S.E.2d 339 (Ct.App.2002) (reversing trial court's revocation of probation where vague probation condition requiring sex offender to "obtain treatment" resulted in confusion among the probationer and probation and mental health officials); *State v. Archie,* 322 S.C. 135, 470 S.E.2d 380 (Ct.App.1996) (holding that only a court, and not a state probation agency, may exercise the judicial function of imposing or modifying conditions of probation).

 The revocation of probation or parole is not a stage of criminal prosecution. However, a probationer or parolee has a constitutionally protected liberty interest and cannot be denied due process simply because probation has been described as an act of grace. *Morrissey v. Brewer,* 408 U.S. 471,

480–90, 92 S.Ct. 2593, 2600–05, 33 L.Ed.2d 484 (1972) (holding that minimum requirements of due process in parole revocation proceeding include "(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole"); *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760, 36 L.Ed.2d 656 (1973) (holding that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey*"); *State v. Riddle,* 277 S.C. 110, 282 S.E.2d 863 (1981) (reversing probation revocation and remanding for hearing consistent with guidelines set forth in *Morrissey* and *Gagnon*). "It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation.... [W]here the proscribed acts are not criminal, due process mandates that [a probationer or parolee] cannot be subjected to forfeiture of his liberty for those acts unless he is given prior fair warning." *U.S. v. Dane,* 570 F.2d 840, 843–44 (9th Cir.1977) (citing *Tiitsman v. Black,* 536 F.2d 678 (6th Cir.1976)).

■ Various conditions of probation generally have been upheld unless (1) the condition is so unreasonable or overly broad that compliance is virtually impossible and the burden imposed on the probationer is greatly disproportionate to any rehabilitative function the condition might serve; (2) the condition has no relationship to the crime of which the offender was convicted; (3) the condition requires or forbids conduct which is not reasonably related to future criminality; (4) the condition relates to conduct which is not in itself criminal unless the prohibited conduct is reasonably related to the crime of which the offender was convicted or to future criminality; (5) the condition violates due process because it is

overly broad or void for vagueness; or (6) the condition unnecessarily or excessively tramples upon First Amendment rights of free association. *See e.g. Beckner,* 296 S.C. 365, 373 S.E.2d 469 (striking down an unreasonable and overly broad condition); *U.S. v. Paul,* 274 F.3d 155, 164–67 (5th Cir.2001) (stating condition of supervised release under federal law will be deemed overly broad when it involves greater deprivation of liberty than is necessary to protect the public and prevent recidivism; thus, condition requiring child pornography offender to avoid both "direct or indirect" contact with minors was not overbroad because "indirect contact" would not be interpreted to encompass chance or incidental encounters with children); *People v. Lent,* 15 Cal.3d 481, 124 Cal.Rptr. 905, 541 P.2d 545, 548 (1975) (discussing analysis of probation conditions); *State v. Donaldson,* 100 N.M. 111, 666 P.2d 1258, 1266–67 (Ct.App.1983) (discussing analysis of probation conditions); *People v. Lopez,* 66 Cal.App.4th 615, 78 Cal.Rptr.2d 66, 74–75 (5th Dist.1998) (holding probation condition which prohibited defendant from involvement in gang activities, association with any gang members, or use of gang insignia, was unconstitutionally overbroad because it prohibited him from associating with persons not known to him to be gang members; but overbreadth was correctable by inserting a knowledge requirement in each prohibition); *In re Justin S.,* 93 Cal. App.4th 811, 113 Cal.Rptr.2d 466, 470–71 (2nd Dist.2001) (prohibiting association with gang members without restricting the prohibition to known gang members is a classic case of vagueness; such a condition violates due process and is void for vagueness and overbreadth); *Dawson v. State,* 894 P.2d 672, 680–81 (Alaska App.1995) (special condition of probation which forbade defendant from having any contact with his wife unless contact was approved by probation officer was unduly restrictive of liberty and could not withstand scrutiny; court made no effort to tailor scope of marital association restriction to specific circumstances of case); *Huff v. State,* 554 So.2d 616 (Fla.App. 2 Dist.1989) (condition of probation that defendant not live with member of opposite sex was invalid as not relating to defendant's crime of burglary or reasonably tailored to prevent future criminal conduct); West's Digests, *Sentencing and Punishment,* Key Nos. 1960–1988 (collecting cases regarding validity of various conditions of probation).

■ With regard specifically to a probation condition prohibiting association with a person with a criminal record, courts generally have upheld such a condition on the ground it is related to the crime for which the offender was convicted, is intended to prevent future criminal conduct, or bears a reasonable relationship to an offender's rehabilitation. It is recognized that restrictions on the rights of association of probationers and parolees are a necessary part of the criminal justice process. The evidence must show, however, that the probationer knew about the person's criminal record during the period of association before the condition may be applied to revoke probation. *E.g. White,* 218 S.C. at 136–41, 61 S.E.2d at 757–59 (upholding application of condition which directed probationer to "avoid persons or places of disreputable or harmful character" where evidence revealed probationer was aware of the condition and potential violation); *U.S. v. Furukawa,* 596 F.2d 921, 922–23 (9th Cir.1979) (upholding probation condition which allowed probationer to associate only with law-abiding persons); *Birzon v. King,* 469 F.2d 1241, 1242–43 (2d Cir.1972) (upholding parole condition prohibiting contact with persons having a criminal record and rejecting argument the condition was so vague it violated due process); *U.S. v. Albanese,* 554 F.2d 543, 546–47 (2d Cir.1977) (although probation conditions phrased in terms of "law-abiding persons" should be avoided, condition that defendant associate only with law-abiding persons was not unconstitutionally vague or overbroad as applied to defendant who was found to have continually and consistently associated over period of years on more than casual basis with large number of convicted criminals); *Alessi v. Thomas,* 620 F.Supp. 589, 593 (S.D.N.Y.1985) (rejecting probationer's argument that he could not have known receipt of numerous telephone calls from felons violated condition forbidding association with persons with criminal record, a condition probationer unsuccessfully argued was void for vagueness); *People v. Miller,* 182 Mich.App. 711, 452 N.W.2d 890 (1990) (holding probation condition which prohibited defendant from associating with man, who was father of defendant's young child and who had criminal record, for the rest of defendant's life could not be enforced; however, condition could be amended so as to prohibit defendant from associating with the man until further order of the court); *People v.*

*Robinson,* 199 Cal.App.3d 816, 245 Cal.Rptr. 50 (1st Dist.1988) (upholding probation condition which prohibited convicted drug offender from associating with persons with criminal record because condition was reasonably related to offender's rehabilitation and preventing future criminal conduct); *Donaldson,* 666 P.2d at 1266–67 (upholding probation condition which prohibited defendant from associating with co-defendant, who had a criminal record and with whom defendant had formed a close personal relationship; condition was intended to prevent future criminal conduct and was reasonably related to defendant's rehabilitation); Annot., *Propriety of Conditioning Probation on Defendant's Not Associating with Particular Person,* 99 A.L.R.3d 967 (1980).

A probationer's "association" with a person who has a criminal record must entail more than incidental or unknowing encounters before the probationer will be found in violation of the condition. "Association" generally has been interpreted to mean intentional, knowing and substantial contact, or the development of a significant or meaningful relationship, with a convicted criminal over a substantial period of time. *E.g. Arciniega v. Freeman,* 404 U.S. 4, 92 S.Ct. 22, 30 L.Ed.2d 126 (1971) (holding a parole condition restricting association with persons with criminal record was not intended to apply to incidental contacts between ex-convicts while working on a legitimate job for a common employer); *U.S. v. Bonanno,* 452 F.Supp. 743, 752 (N.D.Cal.1978) (" 'association' within the context of parole or probation conditions must be more than an incidental contact"); *Alessi v. Thomas,* 620 F.Supp. at 593 (finding more than forty telephone calls with convicted felons over fifteen-month period, in which probationer accepted the collect charges, was sustained and extensive contact which constituted association with persons with criminal record).

In the present case, we reject Appellant's arguments and uphold the validity of the standard condition that Appellant not associate with persons with a criminal record. The condition is not so overly broad as a general rule that it violates due process in all cases; nor does application of the condition under the facts and circumstances of this case violate

due process.[3] The condition is reasonably related to the crime for which Appellant was convicted, is intended to prevent future criminal conduct, and should aid in Appellant's rehabilitation.

We further hold, as the trial court and other courts have recognized, that the no-association condition implicitly requires a finding that the probationer knew the person in question had a criminal record during the period of association, and that the association was not simply an unknowing or incidental encounter. Thus, in order to demonstrate a prima facie violation, the State must present sufficient evidence, which may be direct or circumstantial, that a probationer intentionally had knowing and substantial contact with a person who has a criminal record, or developed a significant or meaningful relationship with that person over a substantial period of time. The probationer then has the opportunity to demonstrate a lack of knowledge of the person's criminal record, a lack of any association with the person or an association which amounts to no more than an unknowing or incidental contact, or offer an explanation for the forbidden contact sufficient to excuse it.

---

3. In the present case, the totality of all the evidence produced supports the decision to uphold the rulings of the courts below. First, there was a witness who testified that after hearing gunshots, she saw two men carry a wounded man into the backseat of a yellow Cadillac. A short period later, a yellow Cadillac was found at the emergency room of the local hospital. That vehicle contained documents with Appellant's name on them, and was registered under the Appellant's grandfather. A hospital security camera showed the Appellant and another man getting out of the Cadillac at the emergency room drop off area.

Second, the Appellant abandoned his car and fled through the emergency room on foot after noticing police inquiry into the vehicle. Nicholas Sanders, the man accompanying the Appellant in the car, also tried to leave the scene after speaking with police. He was a convicted felon and was armed with a handgun.

Third, the Appellant was additionally charged with possession with intent to distribute cocaine, possession of a firearm, and attempted robbery. All of these crimes allegedly occurred during the night of the shooting.

Fourth, while Appellant was serving a probationary sentence for prior drug related convictions, there were 8.72 grams of cocaine and a .22 caliber handgun found in the yellow Cadillac.

Fifth, there was a body found oozing life in the backseat of the yellow Cadillac. That gentleman later died at the hospital from gunshot wounds.

██ Appellant did not offer any testimony or evidence at the revocation hearing, leaving only the State's evidence for consideration on the extent of Appellant's association with Sanders as well Appellant's knowledge of Sanders' criminal record. The State's evidence, and inferences which may be reasonably drawn therefrom, reveals Appellant associated with Sanders while both were involved in an illicit drug transaction which ended in a fatal shooting. A yellow Cadillac belonging to Appellant, which was driven by Appellant that night to the hospital, arrived on the scene immediately after the shooting. The record reveals substantial and significant contact between Appellant and Sanders during a criminal transaction, not merely an unknowing or incidental encounter. Accordingly, we conclude sufficient evidence supports the trial court's decision to revoke Appellant's probation.

Appellant attempted to portray himself as a mere passerby who helped carry an injured person to the hospital. We find no evidence in the record supporting this position. We have little doubt the result in this case would have been different if the evidence showed Appellant merely happened to drive by a crime scene and, acting as a Good Samaritan, unknowingly ferried a felon or two to the hospital.

██ When the trial court's revocation decision is upheld on one ground, it ordinarily is immaterial whether probation was properly revoked on other grounds unless the entire proceeding was tainted by a given error. *See State v. Williamson,* 356 S.C. 507, 512, 589 S.E.2d 787, 789 (Ct.App.2003) (declining to address probationer's arguments regarding other grounds for revocation after concluding trial court properly revoked probation on one ground); *Deal v. State,* 640 S.W.2d 664 (Tex.App. 14 Dist.1982) (finding that any error in revoking probation on one ground will not result in reversal of the revocation where another legitimate ground for revocation exists and was properly enforced); *cf. Whiteside v. Cherokee County School Dist. No. One,* 311 S.C. 335, 340, 428 S.E.2d 886, 889 (1993) (appellate court need not address remaining issues when resolution of prior issue is dispositive). Therefore, we decline to address the remaining issues raised by Appellant.

## CONCLUSION

We uphold the validity of the standard probation condition that a probationer not associate with a person with a criminal record. The condition is not so overly broad as a general rule that it violates due process in all cases. Application of the condition under the facts and circumstances of Appellant's case does not violate due process. We further hold that the no-association condition implicitly requires a finding that Appellant knew the person in question had a criminal record during the period of association, and that the association was not simply an unknowing or incidental encounter. We conclude the trial court did not abuse its discretion in revoking Appellant's probation because the record contains sufficient evidence that Appellant associated with a person with a criminal record.

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.