744 S.E.2d 532

The STATE, Respondent,

v.

James C. MILLER, Petitioner.

Appellate Case No. 2011–194606.

No. 27271.

Supreme Court of South Carolina.

Heard May 2, 2013.
Decided June 19, 2013.

See also 385 S.C. 539, 685 S.E.2d 619, and 393 S.C. 248, 713 S.E.2d 253

Appellate Defender David Alexander, of South Carolina Commission on Indigent Defense, of Columbia, for petitioner.

Tommy Evans, Jr., of South Carolina Department of Probation, Parole & Pardon Services, of Columbia, for respondent.

Justice BEATTY.

This Court granted a petition for a writ of certiorari to review the decision of the Court of Appeals in *State v. Miller*, 393 S.C. 59, 709 S.E.2d 135 (Ct.App.2011), in which it considered the novel question of whether a defendant's probation for a criminal offense should be tolled during his civil commitment pursuant to the Sexually Violent Predator (SVP) Act.[1] The Court of Appeals affirmed a circuit court order tolling James C. Miller's probation while he is in the SVP program. We reverse.

---

1. S.C.Code Ann. §§ 44–48–10 to –170 (Supp.2012). Amendments to some of the provisions in the SVP Act were passed by the General Assembly subsequent to the current matter.

## I. FACTS

On September 6, 2001, Miller pled guilty to committing a lewd act on a child under the age of sixteen and criminal domestic violence of a high and aggravated nature (CDVHAN). For the lewd act conviction, Miller was sentenced to fifteen years in prison, suspended upon the service of ten years in prison and five years of probation. The sentencing sheet on this charge indicates Miller was ordered to undergo sex abuse counseling while in the South Carolina Department of Corrections, and that he was to have no contact with children while on probation. Miller received a concurrent sentence of ten years in prison for the CDVHAN conviction.

Miller's probation began on or about December 1, 2005.[2] However, Miller was not released from custody because, prior to his release from prison, he was referred for review as to whether he should be deemed an SVP and subjected to civil commitment. Miller was ultimately found by a jury to be an SVP. He has been in commitment pursuant to the SVP program and housed at the Edisto Unit since November 29, 2006.[3] Miller's commitment was affirmed by the Court of Appeals and this Court. *In re the Care and Treatment of Miller*, 385 S.C. 539, 685 S.E.2d 619 (Ct.App.2009), *aff'd*, 393 S.C. 248, 713 S.E.2d 253 (2011).

On August 28, 2008, Miller's probation officer issued a probation citation and supporting affidavit. In the box on the citation form for specifying the alleged violation, it is indicated: "Citation issued to give court subject-matter jurisdiction over indictment number 2001–GS–32–2716." A hearing was held before the circuit court on December 19, 2008, at which the court initially expressed some reservation about tolling probation in a matter involving a civil commitment. However,

---

2. According to a report of the South Carolina Department of Probation, Parole, and Pardon Services, Miller's probation began on December 1, 2005 and was scheduled to end on November 30, 2010.

3. An SVP remains under the supervision of the South Carolina Department of Mental Health and is housed in the Edisto Unit on the grounds of the South Carolina Department of Corrections. *See* S.C. Department of Mental Health webpage, *available at* http://www.state.sc.us/dmh/dir_facilities.htm.

the court thereafter issued an "Order Tolling Probation" on March 24, 2009.

The Court of Appeals affirmed. *State v. Miller,* 393 S.C. 59, 709 S.E.2d 135 (Ct.App.2011). The Court of Appeals held the circuit court did not exceed its discretion in finding Miller was unable to comply with all of the conditions of his probation while committed as an SVP and that he would benefit from supervision while in the community. *Id.* at 63, 709 S.E.2d at 137.

The Court of Appeals further stated this Court has recognized that the circuit court has the authority to toll probation in at least two instances: (1) partial revocation and continuance, and (2) absconding from supervision. *Id.* The Court of Appeals stated, however, that it was "mindful that in both these instances the probationer has generally committed some affirmative act to violate the conditions of probation." *Id.* The court acknowledged "Miller was civilly committed against his will," but noted "he admitted to committing a lewd act on a minor under the age of sixteen[,] which contributed to the basis for his civil commitment." *Id.*

The Court of Appeals rejected Miller's argument that tolling his probation in these circumstances converts his civil commitment into a punitive commitment by extending the length of his criminal sentence. *Id.* at 64, 709 S.E.2d at 137–38. This Court has granted Miller's petition for a writ of certiorari.

## II. STANDARD OF REVIEW

■■ The determination of probation matters lies within the sound discretion of the trial court. *See generally State v. Ellis,* 397 S.C. 576, 726 S.E.2d 5 (2012); *State v. Allen,* 370 S.C. 88, 634 S.E.2d 653 (2006). An appellate court will reverse the trial court's decision where there has been an abuse of discretion. *Allen,* 370 S.C. at 94, 634 S.E.2d at 656.

■ "An abuse of discretion occurs when the trial court's ruling is based upon an error of law, such as application of the wrong legal principle; or, when based upon factual conclusions, the ruling is without evidentiary support; or, when the trial court is vested with discretion, but the ruling reveals no discretion was exercised; or when the ruling does not fall

within the range of permissible decisions applicable in a particular case, such that it may be deemed arbitrary and capricious." *Id.*

## III. LAW/ANALYSIS

Miller contends the Court of Appeals erred in holding the circuit court properly tolled his probation during his civil commitment as an SVP. Miller asserts the applicable statutes do not specifically authorize such tolling, and he has committed no misconduct that would justify the imposition of equitable tolling because the probation citation was issued only to bring his probation status before the circuit court.

### Statutory Authority for Probation

■ "In South Carolina, parole and probation are governed by statute." *State v. Crouch*, 355 S.C. 355, 360, 585 S.E.2d 288, 291 (2003). Statutory law authorizes the circuit court to suspend the imposition or the execution of a criminal sentence and place the defendant on probation, except for crimes punishable by death or life imprisonment. S.C.Code Ann. § 24-21-410 (2007).[4] "Probation is a form of clemency." *Id.*

■ "The period of probation or suspension of sentence shall not exceed a period of five years and shall be determined by the judge of the court and may be continued or extended *within the above limit.*" *Id.* § 24-21-440 (emphasis added). Thus, while the court may extend the length of the probation originally given, the total period of probation may not exceed the statutory maximum of five years.

■■ "Probation, a suspension of the period of incarceration, is clearly part of a criminal defendant's 'term of imprisonment[,'] as is actual incarceration, parole, and the suspended portion of a sentence[.]" *Thompson v. S.C. Dep't of Pub. Safety*, 335 S.C. 52, 55–56, 515 S.E.2d 761, 763 (1999). Therefore, whether a violation of probationary terms has occurred and the consequences of any such violation are matters for the courts. *Duckson v. State*, 355 S.C. 596, 598 n. 2, 586 S.E.2d 576, 578 n. 2 (2003). If a defendant has violated the terms of

---

4. Section 24-21-410 was amended in 2010, but the amendment does not affect the current appeal.

his probation, the circuit court may revoke the defendant's probation or suspension of sentence, or, in its discretion, the court may require the defendant to serve all or a portion only of the sentence imposed. S.C.Code Ann. § 24–21–460 (2007).

### Tolling Recognized Under South Carolina Law

There is no explicit reference to tolling in the statutes governing probation. However, South Carolina's appellate courts have expressly recognized the general authority of the circuit court to toll probation.

In *State v. Dawkins*, 352 S.C. 162, 573 S.E.2d 783 (2002), the circuit court ruled the defendant's probationary term was tolled and therefore did not begin to run until after he successfully completed his mandatory two-year term of service in a community supervision program (CSP) pursuant to S.C.Code Ann. § 21–24–560 (Supp.1998) for his no-parole offense.[5] *Id.* at 164–65, 573 S.E.2d at 783–84.

On appeal, this Court noted this was a statutory construction case, and interpreted South Carolina Code section 24–21–560(E), which "provides, '[a] prisoner who successfully completes a [CSP] pursuant to this section has satisfied his sentence and must be discharged from his sentence.'" *Id.* at 165, 573 S.E.2d at 784 (alterations in original). While observing that "all parties agree the statutory scheme is convoluted," the Court held that a prisoner's successful completion of the mandatory CSP for no-parole offenses completely discharges his sentence, including his five-year probationary period, as this result was mandated by the terms of the statute. *Id.* at 167, 573 S.E.2d at 785. Although this Court reversed the circuit court's tolling of probation, it did so because the probation was subsumed by the CSP, not because tolling is prohibited. The Court stated it "believe[d] the legislature intended mandatory participation in the CSP to serve as a

---

5. A "no parole offense" is one in which a prisoner must serve at least 85% of the actual term of imprisonment imposed. *See Dawkins*, 352 S.C. at 164 n. 1, 573 S.E.2d at 784 n. 1; *see also* S.C.Code Ann. § 24–13–100 (2007) (stating a "no parole offense" refers to "a class A, B, or C felony or an offense exempt from classification as enumerated in Section 16–1–10(d), which is punishable by a maximum term of imprisonment for twenty years or more"); *id.* § 24–13–150(A) (defendant must serve 85% of actual term of imprisonment imposed).

more rigorous term of probation for those convicted of no-parole offenses, in lieu of normal probation." *Id.*

Thereafter, in *State v. Crouch,* this Court generally observed tolling could be appropriate in circumstances involving "absconding or partial revocation and continuance." 355 S.C. at 359 n. 2, 585 S.E.2d at 290 n. 2. The Court found the judge erroneously revoked a sentence and tolled the running of probation when the appellant's probation had already ended. *Id.* at 359–60, 585 S.E.2d at 290–91. However, the Court concluded it need not address whether probationary sentences could be tolled so as to turn concurrent sentences into consecutive ones. *Id.* at 361, 585 S.E.2d at 291.

In *State v. Hackett,* 363 S.C. 177, 609 S.E.2d 553 (Ct.App. 2005), the Court of Appeals affirmed a circuit court's ruling that the defendant's probation could be tolled during the period the defendant had absconded from supervision. In doing so, the Court of Appeals reasoned there was no explicit prohibition in section 24–21–440 (providing probation may not exceed five years) on tolling probation. *Id.* at 181, 609 S.E.2d at 555. In addition, in construing the legislative intent, the circuit court could not logically give Hackett credit against his five-year probationary period for the time he absconded, because to do so would be to allow Hackett to escape revocation of his probation and any further punishment, "free and clear of all consequences, as long as he manages to elude apprehension for a set amount of time," which "would lead to an absurd result." *Id.* at 181–82, 609 S.E.2d at 555–56. The Court of Appeals relied for support upon *United States v. Green,* in which the federal district court stated, "It would be unreasonable to conclude that a probationer could violate conditions of probation and keep the clock running at the same time, thereby annulling both the principle and purpose of probation." *Id.* at 182–83, 609 S.E.2d at 556 (quoting *United States v. Green,* 429 F.Supp. 1036, 1038 (W.D.Tex.1977)).

### Application of Tolling in Current Matter

■ In the current appeal, the Court of Appeals stated it was mindful that in instances where the Supreme Court of South Carolina had previously recognized tolling was appropriate, "the probationer has generally *committed some affirmative act to violate the conditions of probation.*" *Miller,* 393 S.C. at 63, 709 S.E.2d at 137 (emphasis added). Nevertheless,

the Court of Appeals appeared to find this standard was met based on Miller's *past* misconduct: "Miller was civilly committed against his will, [but] he admitted to committing a lewd act on a minor under the age of sixteen[,] which contributed to the basis for his civil commitment." *Id.* We find Miller's past misconduct is irrelevant in this particular analysis, as it would not form the basis for finding a probation violation nor would it support tolling of probation because the conduct occurred before sentencing.

 The general rule applied in most jurisdictions is that the tolling of probation is appropriate where the authorities could not supervise the defendant due to the defendant's wrongful acts. It is based on the principle that a defendant should not be allowed to profit from his own misconduct which prevents supervision by probationary authorities. *See generally* 24 C.J.S. *Criminal Law* § 2153 (2006) ("The period of probation is tolled while the probationer is a fugitive from justice or serving a sentence imposed by another court. The period during which the probationer is imprisoned for violating his or her probation tolls the probationary term for the duration of the imprisonment." (footnote omitted)). The references to tolling by our own appellate courts have also focused on fault-based grounds. Thus, we conclude that the tolling of probation must be premised on a violation of a condition of probation or a statutory directive.

The State does not allege that Miller has violated a condition of his probation. Indeed, the State makes no allegation of fault by Miller. The State argues only that Miller's probationary period should be tolled because he is receiving mental health treatment in the SVP program and is, therefore, unavailable for community supervision.

The SVP program in this state is administered under the supervision of the Department of Mental Health. *See generally* S.C.Code Ann. § 44–48–20 (Supp.2012) (providing the General Assembly has found that an involuntary, civil commitment process is desirable for those found to be an SVP and observing that "[t]he civil commitment of [SVPs] is not intended to stigmatize the mentally ill community"); *id.* § 44–48–30(1)(a)–(b) (defining an SVP as one who (1) "has been convicted of a sexually violent offense," and (2) "suffers from a mental abnormality or personality disorder that makes the person

likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment").

Notwithstanding its punitive attributes, this Court and many others, to include the United States Supreme Court, have concluded that an SVP program is a civil, non-punitive treatment program. *Seling v. Young,* 531 U.S. 250, 267, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) (concluding confinement under Washington's SVP program was civil and not intended as punishment); *Kansas v. Hendricks,* 521 U.S. 346, 361–65, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (holding a similar SVP program was civil and that involuntary commitment for a mental abnormality was not punitive); *In re Treatment and Care of Luckabaugh,* 351 S.C. 122, 135, 568 S.E.2d 338, 344 (2002) (stating the SVP Act is a civil, non-punitive statutory scheme); *In re Care and Treatment of Matthews,* 345 S.C. 638, 648, 550 S.E.2d 311, 316 (2001) ("Our [SVP] Act specifies the purpose of the Act is **civil** commitment."). The SVP program is treated as a civil program for all other purposes, and we see no existing basis for treating this type of civil commitment for persons with mental illness any differently than other forms of civil commitment.

Traditionally, a civil commitment, whether in a drug treatment center, mental health clinic, or other facility, does not give rise to tolling, and it appears inconsistent to treat those under civil commitment in the SVP program any differently in the absence of some legislative directive to do so. As it stands now, commitment to the SVP treatment program is indeterminate and could last a life time. Although we certainly appreciate the policy considerations that weigh on both sides in this matter, the decision to carve out a categorical exception for those committed in the SVP program, as opposed to other forms of civil commitment, is a matter best left to the General Assembly, since probation exists solely by statute, and the General Assembly has not, to date, seen fit to make this exception.

## IV. CONCLUSION

Based on the foregoing, we reverse the decision of the Court of Appeals, which upheld the tolling of Miller's probation during his civil commitment in the SVP program.

**REVERSED.**

TOAL, C.J., KITTREDGE, J., and Acting Justice JAMES E. MOORE, concur.

PLEICONES, J., concurring in result only.