685 S.E.2d 619

**In the Matter of the CARE AND TREATMENT OF James Carl MILLER, Appellant.**

**No. 4618.**

Court of Appeals of South Carolina.

Heard April 23, 2009.

Decided Sept. 9, 2009.

Withdrawn, Substituted, and Refiled Nov. 4, 2009.

Appellate Defender Lanelle C. Durant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Deborah R.J. Shupe, Assistant Attorney General Brandy

A. Duncan, Assistant Attorney General William M. Blitch, Jr., all of Columbia, for Respondent.

LOCKEMY, J.:

James Carl Miller appeals the trial court's denial of his motion to dismiss, arguing the State's failure to hold a hearing within sixty days after the court found probable cause to believe Miller was a sexually violent predator requires the action be dismissed pursuant to the Sexually Violent Predator Act (the Act). We affirm.

## FACTS/PROCEDURAL BACKGROUND

In 1998, the mother of a one-year-old baby walked into a room and found Miller leaning over her child with his pants down, while the baby's diaper was off. While exiting the room, Miller punched the mother. Miller pled guilty to committing a lewd act on a child under the age of sixteen years and criminal domestic violence of a high and aggravated nature (CDVHAN). The trial court sentenced Miller to fifteen years' imprisonment for the lewd act offense suspended upon the service of ten years and five years' probation, and ten years imprisonment for the CDVHAN, to be served concurrently.[1]

Prior to his release, Miller's case was referred to the multidisciplinary committee for assessment pursuant to section 44–48–40 of the South Carolina Code (Supp.2008). After review in May of 2005, the multi-disciplinary team found Miller satisfied the statutory definition of "Sexually Violent Predator" (SVP) pursuant to section 44–48–30 of the South Carolina Code (Supp.2008). Thereafter, the multi-disciplinary team referred the case to the Prosecutor's Review Committee (the Committee).

---

1. Prior to Miller's 1998 plea, Miller pled guilty to taking indecent liberties with children in a North Carolina court. The date of the offense was on or about June 5, 1995. North Carolina sentenced Miller to probation for the offense on the condition that he participate in sex offender treatment. Subsequently, he violated probation and was imprisoned for approximately two-and-a-half months in 1996. In 1998, Miller fled North Carolina while still on probation and was considered a fugitive.

The Committee determined probable cause existed to conclude Miller was an SVP. After this finding, pursuant to section 44–48–70 of the South Carolina Code (Supp.2008), the State filed a petition requesting a trial court make a judicial determination as to whether Miller was an SVP and petitioned the trial court for a probable cause hearing. In August, the court appointed Janice Baker as Miller's counsel. A probable cause hearing pursuant to section 44–48–80 of the South Carolina Code (Supp.2008) was set for August 29, 2005, before the Honorable William P. Keesley.

When notified of the hearing, Baker informed the Attorney General's office that she would be relieved of counsel in the case and that the new attorney would be David B. Betts. Therefore, she would not participate in the hearing, and it needed to be postponed until Betts received the case file from her. The original hearing date was continued, and Betts was appointed by order. Efforts to get a new hearing were hindered by the untimely death of Judge Marc Westbrook shortly thereafter. On November 3, 2005, the court held Miller's probable cause hearing.

After the court found probable cause existed to believe Miller was an SVP, pursuant to section 44–48–90 of the South Carolina Code (Supp.2008), the State had sixty days to conduct Miller's civil SVP trial. Although Miller was scheduled to be released from prison on December 1, 2005, the Act allowed the State to continue to confine Miller for the sixty days leading up to his SVP civil trial. *See* § 44–48–90. The sixty-day window would have expired on January 2, 2006. Prior to the expiration of the sixty day time period, the State realized that it would not have a mental health evaluation from the Department of Mental Health by the deadline set by the statute. The State, therefore, moved for a continuance pursuant to section 44–48–90 on December 29, 2005. In its motion, the State pointed out January 2, 2006, was a holiday, and the last day for a trial of Miller's case would be December 30, 2005. Furthermore, the State indicated the court-ordered evaluation of Miller would not be complete until January 31, 2006, and pointed to problems in obtaining information related to Miller's prior North Carolina convictions.[2]

---

2. Though the State indicated Miller's evaluation would not be completed until January 31, 2006, from the record it appears the evaluation

On January 13, 2006, the trial court held a hearing regarding the State's motion for a continuance. At the hearing, Miller's counsel argued Miller was being held "without bond and is now incarcerated because they said there was probable cause to have him evaluated." Further, Miller's counsel argued "the statute says—the [S]tate can ask for a continuance . . . only if the respondent will not be substantially prejudiced, and it says it may be continued up[on] request of either party on a showing of good cause." Up until this time, Miller had made no motion to dismiss or raised an objection even though he was being held beyond his release date. The State responded that it was ready to try the case on January 13 or as soon as the court could get a jury together. The trial court commented on the State's delay in bringing the action by stating: "The Attorney General has got to comply with the statute, and the [courts] have got to give you an opportunity to be heard." Furthermore, the trial court noted: "The State has a habit of waiting until the man's about to be released in all cases and then filing these actions. . . . The legislature drew hard and fast lines and if [Miller] is going to suffer substantial prejudice and a deprivation of liberty is substantial prejudice." The court made the assertion about alleged habits of the State without any supporting documentation or evidence for its assertion. Even so, the trial court found it was not unreasonable to set the trial for the following week, beginning January 17, 2006. Thus, in effect the trial court granted the State's motion for a continuance.

Miller voiced no objection to the continuance, but in response to the trial court's ruling, Miller's counsel made a motion to dismiss for the first time based on Miller's substantial prejudice and cited to *In re Matthews*, 345 S.C. 638, 550 S.E.2d 311 (2001). The trial court did not rule on Miller's motion to dismiss, but stated: "I think you have to file your motion if you want it dismissed, and then if you have a motion to dismiss and set forth the reasons then I could address that today." Miller's counsel agreed to file the motion to dismiss that afternoon and requested scheduling a hearing on that

was completed on January 13, 2006, as the State was ready to proceed with Miller's civil commitment trial the day of the continuance hearing. Further, the record indicates Miller's counsel received the evaluation report prior to the January 17, 2006 hearing.

motion. The trial court again did not rule on Miller's motion to dismiss but instructed trial counsel to "file whatever you think you need to" and indicated "[w]hat I've stated in the record is the order of the [c]ourt."

On January 17, 2006, the trial court held a hearing on Miller's motion to dismiss. There, counsel stated: "[Miller] paid his debt under the criminal statutes of this State. He was free to go on December the 1st." The State responded by pointing out that Dr. Pamela Crawford conducts all the SVP evaluations in South Carolina, which is a fairly significant load. Further, the State reasoned "that [it] is very important, not only for the public and the State . . . for her to do a thorough job." As support for its "good cause" assertion, the State mentioned several things out of its control occurred before and after Miller's probable cause hearing, including the untimely death of Judge Westbrook, change of Miller's counsel, and changes in the Attorney General's office. The State repeated that it was ready for trial, but the defense inferred that if the motion to dismiss was not granted it needed the case continued to have its own evaluation completed to combat the State's expert. Accordingly, the trial court continued the case. Further, it did not rule on Miller's motion that day but apparently took the matter under advisement. The trial court denied Miller's motion in a written order filed July 24, 2006, after weighing the State's interest in proceeding with the SVP trial against Miller's prejudice. Specifically, the trial court's order stated:

> [T]he State routinely waits until the inmates falling under the [Act] are nearing their max-out date before beginning the process set out under the statute. However, the [c]ourt finds that the State's interest in examining potential [SVP]s outweighs the prejudice to [Miller]. Absent a showing of substantial prejudice, the [c]ourt DENIES the motion to dismiss but reminds the State that it is in the interest of justice to begin the statutory evaluation prior to the imminent max out date of inmates falling under the statute.

Thereafter, the State moved to alter or amend the trial court's order denying Miller's motion to dismiss. Specifically, the State requested the trial court remove the following sentence: "[T]he State routinely waits until the inmates falling under the [Act] are nearing their max-out date before beginning the

process set out under the statute" from its order.  The State pointed out that regardless of what may have occurred in other cases, the state began this process more than 180 days prior to Miller's scheduled release date.  Furthermore, the State asserted but for Miller's decision to change counsel which delayed the process for more than sixty days, the probable cause hearing would have taken place more than ninety days before his release date.  The trial court denied the State's motion to alter or amend on September 6, 2006, once again without providing any evidence to support its assertion.

Miller's civil SVP trial began on November 27, 2006, in Lexington County.[3]  The jury found Miller was an SVP, and the trial court issued an order of commitment.  This appeal followed.

## LAW/ANALYSIS

Miller argues the trial court erred in denying his motion to dismiss when his civil SVP trial was not held within sixty days after the probable cause hearing because he was incarcerated past his release date.  Specifically, Miller argues section 44–48–90 allows for a continuance only upon 1) request of either party;  2) good cause shown;  and 3) "only if the respondent will not be substantially prejudiced."  Miller argues he was substantially prejudiced because he was faced with two choices:  1) he could have gone forward with trial on January 13, 2006, without having an independent psychiatric evaluation, depriving him an opportunity to prepare a defense or 2) he could have asked for a continuance in order to obtain the independent psychiatric evaluation which would have resulted in his continued incarceration past his release date.  Miller argues either choice was substantially prejudicial.

In reply, the State argues the trial court did not err in denying Miller's motion because the case was properly continued under section 44–48–90.  Specifically, the State addressed the three statutory requirements Miller cited and argued it demonstrated good cause for a continuance and Miller was not

---

3. The record on appeal does not indicate that Miller made any other requests to the court after the January 17, 2006 hearing to seek an earlier trial date or make any other complaints about the process before his trial on November 27, 2006.

substantially prejudiced. In its prejudice argument, the State mentions most of Miller's extended confinement was due to circumstances beyond its control, including the untimely death of Judge Westbrook. Additionally, Miller's change in counsel required a postponement of the initial probable cause hearing from August 29, 2005 to November 3, 2005. Finally, the State contends obtaining records for a complete evaluation is in the best interest of the State as well as Miller and explained Dr. Pamela Crawford could not perform a complete evaluation of Miller within the statutory time parameters. The State further argues that "as a matter of public policy, it is important that the court appointed evaluator be afforded the time and opportunity to conduct a complete evaluation." Such a thorough evaluation, explains the State, would be in the best interest of the public at large as well as Miller. Further, the State notes all the burdens it must comply with under the Act and argues "any prejudice to [Miller] in this case was overwhelmingly outweighed by the interest of the State."

The Act requires the State to follow certain procedures and timelines before committing an individual as an SVP. When a person has been imprisoned for one or more of the sexually violent offenses identified in section 44–48–30 of the South Carolina Code (Supp.2008), the Act requires the agency with jurisdiction over that person to notify the Attorney General and a multidisciplinary team designed to evaluate the particular offender prior to his release. *See* S.C.Code Ann. § 44–48–40(A) (Supp.2008). The multidisciplinary team reviews relevant records and assesses whether the person the team is reviewing satisfies the definition of an SVP under the Act. S.C.Code Ann. § 44–48–50 (Supp.2008). If the multidisciplinary team determines the person satisfies the statutory definition, the team forwards its assessment and all relevant records to the Committee. *Id.*

Section 44–48–80(A) of the South Carolina Code (Supp. 2008) states "the court must determine whether probable cause exists to believe that the person named in the petition is a sexually violent predator." Once probable cause is established in a hearing, a trial is conducted. Section 44–48–90 of the South Carolina Code (Supp.2008) states: "Within sixty days after the completion of a hearing held pursuant to Section 44–48–80, the court must conduct a trial to determine

whether the person is a sexually violent predator." A provision in section 44–48–90 allows for an extension of the sixty-day time frame and states: "The trial may be continued upon the request of either party and a showing of good cause, or by the court on its own motion in the due administration of justice, and only if the respondent will not be substantially prejudiced."

In *In re Matthews,* the South Carolina Supreme Court addressed whether a trial court had subject matter jurisdiction when the State failed to comply with the sixty-day time period without asking for a continuance. 345 S.C. 638, 550 S.E.2d 311 (2001). The *Matthews* court found "the legislature's use of the word 'shall' in section 44–48–90 indicates the holding of a trial within sixty days of the probable cause hearing is mandatory." 345 S.C. at 644, 550 S.E.2d at 313. Additionally, the court noted section 44–48–90 created a statutory burden on the State or the trial court to "require the issuance of a continuance, or even a notation in the record, indicating (1) the trial cannot be held within sixty days; (2) good cause for the delay; and (3) the respondent will not suffer prejudice." *Id.* at 644, 550 S.E.2d at 314. Ultimately, the supreme court found the State's failure to comply with the statutory time period did not deprive the trial court of jurisdiction. *Id.* at 645, 550 S.E.2d at 314. Thus, the appellant in *Matthews* should have filed a motion to dismiss when the State failed to bring the case within sixty days without asking for a continuance. *Id.* Here, the State sought a continuance before the expiration period as required by *Matthews* and noted why the case could not be tried within sixty days.

We find the trial court did not err in denying Miller's motion to dismiss. As the trial court mentioned, the legislature set definite timelines for SVP actions, and this court must give plain meaning to clearly written statutes. *See Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.... Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning."). Under the legislation at issue, the General Assembly used strong language like "shall" and intended to

make exceptions to the sixty-day requirement only in limited circumstances. *See Matthews,* 345 S.C. 638, 644, 550 S.E.2d 311, 314 ("The language of the Act does allow a trial to be held outside the sixty day period, but only under certain conditions."). We find the State followed *Matthews* and the statutory requirements for the trial court to conduct Miller's civil commitment trial more than sixty days after the probable cause hearing.

■ Here, the State complied with these conditions and followed the guidelines set by *Matthews* by seeking a continuance prior to the expiration of the sixty day time period.[1] It is clear that the *Matthews* court decided that although the legislature has set mandatory standards to be followed in SVP cases, these standards are not jurisdictional. 345 S.C. at 645, 550 S.E.2d at 314. Further, *Matthews* notes that the statute provides a means for cases to be continued. *Id.* at 644, 550 S.E.2d at 314. In the instant case the trial court found good cause existed to grant the State's motion for a continuance and that granting the motion would not result in substantial prejudice to Miller. In making this ruling, the trial court considered several factors, including: 1) Miller's change in counsel that delayed the case over thirty days, 2) the interest of Miller in having a thorough report by DMH that could have been in his favor; and 3) granting the State's motion for continuance on January 13, 2006, was only ten days after the expiration of the sixty day window set on November 3, 2005. Therefore, we find the State satisfied the first two prongs of *Matthews* by demonstrating the trial could not be held within sixty days and good cause for the delay.

■ Our analysis now turns to whether Miller was substantially prejudiced by the trial court's granting of the State's motion for a continuance. The Act does not define "prejudice." Here, both Miller and the State were granted great latitude in order to sufficiently prepare for the SVP trial. Though the State was ready to proceed to trial on January 13,

---

**4.** We note with interest that Miller does not appeal the trial court's decision to grant the continuance based upon consideration of section 44–48–90, rather he appeals the trial court's decision not to grant his motion to dismiss. It should also be noted that the State was ready to proceed on and after January 13, 2006, and the record does not indicate any delay thereafter was attributable to the State.

due to the trial court's grant of the motion for a continuance, Miller, pursuant to his request, was able to prepare a defense and complete an independent psychiatric examination. Therefore, the trial court's grant of the motion for a continuance enabled Miller to adequately prepare for his trial and develop a trial strategy, and we find the trial court properly denied Miller's motion to dismiss thereafter.

We recognize Miller was incarcerated past his release date; however, we are hesitant to set a bright line rule which would require reversal of an SVP's commitment when an individual is detained past his release date. In this respect, the State was ready to proceed with trial on January 13, 2006 and prior to that date Miller had not filed a motion to dismiss. Accordingly, the trial court found it was not unreasonable to set Miller's civil commitment trial the week beginning January 17, 2006. Accordingly, we do not believe Miller suffered substantial prejudice by his two week prolonged incarceration. For the reasons set forth above, we believe the State met the three part test articulated in *Matthews*.

We also note with concern that Miller's civil commitment trial did not occur until well over a year after the probable cause hearing was held, some ten months longer than the limit prescribed in section 44–48–90. It is further noted that, with the exception of the trial court's order denying the motion to dismiss, the record before us contains no indication whether either party moved to proceed with the commitment trial prior to the date it actually took place. Although not reversible error under these circumstances, as explained above, it is worth emphasizing that SVP trials should take priority when scheduling a court's docket, precisely because of the potential for the prolonged incarceration evidenced in this case. *See* § 44–48–90 ("If such a request is made, the court must schedule a trial before a jury at the next available date in the court of common pleas in the county where the offense was committed."). For the reasons set forth above, the decision of the circuit court is therefore

**AFFIRMED.**

HEARN, C.J., and PIEPER, J., concur.